# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-06-00358-CV

**Brian Charles Smith; Robert Hammond; David Talton; and John Collins, Individually, and on Behalf of All Others Similarly Situated, Appellants**

**v.**

**Greg Abbott, in his Official Capacity as Attorney General of the State of Texas; Cathleen Parsley, in her Official Capacity as Chief Administrative Law Judge, State Office of Administrative Hearings; and Alicia Key, in her Official Capacity as Director, Title IV-D Agency, Office of the Attorney General, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT NO. D-1-GN-04-002159, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## O P I N I O N

To address issues raised in the appellees' motion for rehearing,[1] we withdraw our opinion and judgment dated July 31, 2009, and substitute the following in its place. We overrule the appellees' motion for rehearing.

A group of pro se litigants—Brian Charles Smith, Robert Hammond, David Talton, and John Collins (collectively, appellants)—have purported to appeal final district court orders disqualifying their counsel and dismissing, for lack of subject-matter jurisdiction, individual and

---

[1] After appellees filed their rehearing motion, we requested a response from appellants on September 28, 2009. No response was ever filed.

putative class claims they asserted against the Attorney General, the Chief Administrative Law Judge of the State Office of Administrative Hearings (SOAH), and the Director of the Attorney General's Child Support Division (the "Division"), all in their official capacities.[2] For reasons we explain below, we will dismiss Collins's appeal for want of jurisdiction, affirm the disqualification order, and affirm the dismissal of Hammond and Talton's claims. However, while we conclude that the district court properly dismissed some of Smith's claims, it erred in dismissing others and in dismissing one of the properly dismissed claims "with prejudice."

## BACKGROUND

This appeal concerns the authority that chapter 232 of the family code delegates to the Attorney General and the Division to administratively suspend state licenses as a means of enforcing child support obligations. *See generally* Tex. Fam. Code Ann. §§ 232.001-.016 (West 2008). The legislature has designated the Office of the Attorney General as Texas's "Title IV agency" and charged it with providing the child support enforcement functions and services required by Title IV-D of the federal Social Security Act. *See* Tex. Fam. Code Ann. § 231.001 (West 2008); *see generally id.* §§ 231.002-.309 (West 2008); 42 U.S.C.A. § 651 (West 2003). Within the Attorney General's office, these duties are handled by the Division. *See* Tex. Fam. Code Ann. § 231.0012 (requiring that "[t]he person appointed by the attorney general as the person responsible for managing the Title IV-D agency's child support enforcement duties shall report directly to the attorney general"). Among other powers, the "Title IV-D agency" (i.e., the Division) may issue an

_____

[2] Where there has been a change in the interim, we have substituted the current officers. *See* Tex. R. App. P. 7.2(a).

2

order under chapter 232 suspending a state license held by a child support obligor if it is determined that the obligor (1) owes overdue child support in an amount equal to or greater than the total support due for three months under a support order, (2) has been provided an opportunity to make payments toward the overdue child support under a repayment schedule, and (3) has failed to comply with the repayment schedule. *Id.* § 232.003(a). A proceeding to obtain such an order—which may be initiated by the "Title IV-D Agency" itself—is governed by the contested-case provisions of the Administrative Procedures Act, excluding the APA's provisions governing license revocations. *See id.* § 232.004(d); Tex. Gov't Code Ann. § 2001.054 (West 2008). Chapter 232 further provides that "[t]he director of the Title IV-D agency or the director's designee may render a final decision in a contested case proceeding under this chapter." Tex. Fam. Code Ann. § 232.004(d). "An order issued by a Title IV-D agency under this chapter is a final agency decision and is subject to review under the substantial evidence rule" of the APA. *Id.* § 232.010.

During the period relevant to this case, the Attorney General by rule had designated "an administrative law judge designated by the Office of the Administrative Law Judge, Child Support Division," to both preside at the contested-case hearings in Title IV-D license-revocation proceedings and to issue the final orders. 20 Tex. Reg. 5555 (1995) (codified at 1 Tex. Admin. Code § 55.208(a)); 25 Tex. Reg. 3232 (2000).[3] However, it is undisputed that, in January 2004, the Attorney General entered into an interagency contract with SOAH whereby the

---

[3] While this cause was pending in the district court, the Attorney General's office amended its rules to designate "an administrative law judge, including an administrative law judge of the State Office of Administrative Hearings," to conduct hearings and issue final orders in Title IV-D license-suspension proceedings. 30 Tex. Reg. 7427 (2005). However, these subsequent amendments were not in effect during the administrative proceedings from which this suit arose.

Division would refer Title IV-D license-revocation proceedings to SOAH, whose ALJs would then conduct the contested-case hearings in the proceedings and issue the final orders. The contract itself is not in our record.

In April 2004, under color of family code chapter 232 and SOAH's interagency contract with the Attorney General, a SOAH ALJ conducted a contested-case hearing and issued a final order suspending Smith's driver's license for non-payment of child support. Smith timely filed a motion for rehearing with SOAH and, after it was denied, timely filed suit for judicial review of the suspension order under the APA. *See* Tex. Gov't Code Ann. § 2001.174 (West 2008). With his APA judicial review claim, Smith also asserted claims for relief under the Uniform Declaratory Judgments Act (UDJA). *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 2008). Named as defendants were the Attorney General, the Director of the Division, and SOAH's chief ALJ, all in their official capacities (collectively, appellees). Smith's principal allegation was that his license-suspension order was void or invalid because SOAH had lacked statutory authority either to conduct the contested-case hearing or to issue the final order because that authority lay solely in the Division. Smith also alleged that appellees had failed to take account of a 2002 statutory change in calculating the interest on his child-support arrearages. Subsequently, Hammond, Talton, and Collins joined the suit as plaintiffs and asserted similar complaints regarding license-suspension orders[4] issued by SOAH ALJs.[5] In addition to asserting their claims individually,

[4] All three had their driver's licenses suspended by final orders of SOAH ALJs, acting under color of chapter 232 and the interagency contract, following contested-case hearings. Talton's order also suspended his barber's license.

[5] Each of these plaintiffs acknowledged that their respective suspension orders had been issued by default; i.e., they had not contested the merits before SOAH. *See* Tex. Fam. Code Ann.

4

appellants purported to represent a putative class of persons "whose license privileges have been interfered with or otherwise impaired by the application or threatened application of this illegal process." Appellants requested that the district court vacate the suspension orders, enjoin the Division from transferring—and SOAH from hearing—Title IV-D license-suspension proceedings, and declare that SOAH has and is exceeding its authority in conducting contested-case hearings and in issuing final orders in those proceedings. Appellants also sought attorney's fees under the UDJA. Finally, appellants requested an order that the Division "recalculate the arrearage due on their child support obligations" in a manner consistent with statutory interest provisions.

The Attorney General and the Director filed a plea to the jurisdiction attacking appellants' pleadings. They argued that appellants' claims, as pled, were barred by sovereign immunity. Following a hearing at which only argument was presented, the district court denied the plea.[6]

Thereafter, the Attorney General and the Director filed a motion to disqualify appellants' counsel, Samuel T. Jackson. Until April 2004, when he left to begin a private practice, Jackson had served as an ALJ in the Division who conducted Title IV-D license-suspension proceedings. The motion alleged that, before departing the Division, Jackson had obtained a copy of a "confidential" internal Division database containing names and contact information concerning

---

§ 232.009 (West 2008) (where obligor defaults, "Title IV-D agency shall consider the allegations of the [license suspension] petition to be admitted and shall render an order suspending the license without the requirement of a hearing").

[6] Although the Hon. Stephen Yelenosky rendered the order dismissing appellants' last remaining claims, several other district judges made interlocutory rulings in the case. The Hon. Scott Jenkins was the judge who denied the first plea to the jurisdiction.

5

respondents in Title IV-D license-suspension proceedings pending in the Division. The motion further alleged that Jackson had utilized this "confidential information" in soliciting business from license-suspension respondents and had obtained each of the plaintiffs as clients in this way. The motion invoked the general requirement that lawyers decline representation when the representation will result in the lawyer violating other disciplinary rules or "other law," *see* Tex. Disc. R. Prof. C. 1.15, and three specific grounds: Jackson's conduct violated rules 1.10(c) and 7.03 of the Texas Disciplinary Rules of Professional Conduct, as well as a separation agreement Jackson signed before he departed the Attorney General's office. *See id.* R. 1.10(c), 7.03. An evidentiary hearing was held in which Jackson admitted having obtained each appellant as a client through his use of the database, but disputed whether the information was confidential and whether his conduct violated any of the legal standards the movants had accused him of violating.

The district court[7] granted the motion, disqualified Jackson from serving as counsel in the case, and entered findings of fact and conclusions of law. Appellants (with Jackson still representing them) thereafter sought mandamus relief from this Court. We concluded that appellants did not establish their entitlement to relief.[8] Appellants then unsuccessfully sought mandamus relief in the supreme court,[9] then unsuccessfully sought rehearing of the supreme court's order.[10]

---

[7] The Hon. Lora Livingston presiding.

[8] *In re Smith*, No. 03-05-00226-CV (Tex. App.—Austin 2005, orig. proceeding [mand. denied]).

[9] *In re Smith*, No. 05-0457 (Tex. 2005) (orig. proceeding).

[10] *In re Smith*, No. 05-0457, 2005 Tex. LEXIS 808 (Tex. 2005) (orig. proceeding, reh'g denied).

After the supreme court overruled appellants' motion for rehearing, appellees filed a first supplemental plea to the jurisdiction asserting that the district court lacked subject-matter jurisdiction over Hammond, Talton, and Collins's claims because each had failed to satisfy statutory prerequisites to a suit for judicial review under the APA.[11] Appellees presented proof that Talton had filed an untimely motion for rehearing of his license-suspension order and that Collins had never filed one at all. Appellees also showed that, after their motions for rehearing were overruled by SOAH, Talton and Hammond failed to timely file their suit for judicial review. The district court[12] granted the plea and issued an order dismissing the claims of Hammond, Talton, and Collins "with prejudice."

Subsequently, appellants, with Jackson still purporting to represent them, filed in the district court a "Motion to Reinstate Counsel or to Clarify" the disqualification order, which was denied.[13] Appellees then filed a second supplemental plea to the jurisdiction seeking dismissal of Smith's claims on grounds of mootness.[14] Appellees presented evidence that the Division had obtained an order from SOAH staying the April 2004 order suspending Smith's driver's license on grounds that Smith had agreed to a schedule for repaying his child-support arrearages. Appellees reasoned that, because this order had the effect of returning Smith's driver's license to him, he

---

[11] The file copy of this plea indicates that appellees served a copy on the now-pro se plaintiffs rather than Jackson, as he had been disqualified.

[12] This time, the Hon. Gisela Triana presiding.

[13] Judge Livingston, who had issued the disqualification order, also decided the motion to revisit it.

[14] As before, the file copy of the plea indicated that appellees served the pro se plaintiffs directly and did not transmit a copy to Jackson.

7

no longer had a justiciable interest in the case. The district court granted the motion and dismissed Smith's claims "with prejudice."[15] As this order disposed of the last remaining claims in the case, it resulted in a final, appealable judgment. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191 (Tex. 2001).

Thereafter, appellants, again with Jackson purporting to represent them, sought mandamus in this Court from the district court's order denying their "Motion to Reinstate Counsel or to Clarify Order," as well as an emergency stay of the disqualification. We again concluded that appellants had not shown their entitlement to relief.[16] Jackson proceeded to file a "Joint Notice of Appeal" on appellants' behalf as well as his own. The Attorney General responded with a motion to dismiss the appeal based on Jackson's disqualification. This Court ordered Jackson to appear for a show cause hearing. He appeared and filed a written response to the dismissal motion. In a nine-page per curiam order, we rejected Jackson's contentions and held that he did not have standing to participate in the appeal on his own behalf, and held that, unless and until his disqualification order was overturned, he could not represent appellants.[17] However, in the interest of justice, we did not dismiss the appeal outright, but permitted appellants fifteen days in which to decide whether they wished to proceed by filing an amended notice of appeal to reflect that Jackson was not a party and was not representing them any longer.[18] In response to our order, three of the

---

[15] This was Judge Yelenosky's order.

[16] *In re Samuel T. Jackson*, No. 03-06-00209-CV (Tex. App.—Austin 2006, orig. proceeding).

[17] *Smith v. Abbott*, No. 03-06-00358-CV (Tex. App.—Austin 2007) (per curiam).

[18] *Smith*, No. 03-06-00358-CV, slip op. at 9.

four appellants—Smith, Talton, and Hammond, but not Collins—each timely filed a pro se notice of appeal indicating they were challenging both the dismissal of their claims and the disqualification order.

## ANALYSIS

In an "Appellants' Brief" signed by only Smith and Talton but purporting to be submitted on behalf of Hammond and Collins as well, six issues are presented. Two issues concern the dismissals, and the rest address the disqualification order.

Before turning to these issues, we must first address a threshold question of our subject-matter jurisdiction.

**Appellate jurisdiction**

In their rehearing motion, appellees point out, for the first time, that Collins failed to file an amended notice of appeal as required by this Court's order. Appellees urge that Collins's failure to perfect an appeal deprives us of jurisdiction to grant him any relief. We agree, and must dismiss his "appeal" (i.e., the requests for appellate relief that other pro se litigants are purporting to present on his behalf) for want of subject-matter jurisdiction. *See* Tex. R. App. P. 42.3; *see also Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993) (subject-matter jurisdiction can be raised at any time).[19]

---

[19] Appellees similarly urge that Hammond's failure to sign the "Appellants' Brief" "suggest[s] that [he] ha[s] elected not to participate in the appeal." Appellees add that pro se litigants like Smith and Talton are prohibited by law from signing the brief on Hammond's (or Collins's) behalf. *See* Tex. Gov't Code Ann. § 81.102(a) (West 2005). Although this might be grounds for us to dismiss Hammond's appeal for want of prosecution, *see* Tex. R. App. P. 38.8

9

We will hereinafter refer to Smith, Talton and Hammond collectively as the "remaining appellants" to distinguish them from the larger group that included Collins.

**Disqualification of counsel**

In their fifth issue, the remaining appellants urge us to revisit our previous holding that Jackson is not entitled to participate in this appeal either in his own behalf or (unless and until we reverse the disqualification order) as their counsel. In their third issue, the remaining appellants complain that the district court failed to make "specific findings" "articulating a compelling reason for the disqualification and demonstrating that disqualification was the least restrictive means of guarding against an irreparable and imminent injury," which, they contend, are required by the "First and Fourteenth Amendments and Texas's free speech, due course of law, and open courts provisions." In their fourth issue, the remaining appellants argue that the district court erred in disqualifying their counsel under rule 1.10(c). Finally, in their sixth issue, the remaining appellants urge that, even if Jackson was properly disqualified from representing them in proceedings adverse to the Attorney General and the Division, these grounds do not support disqualifying him from representing them in their claims against SOAH.

Appellees' sole response to these arguments is to assert that the disqualification order is "void," and "should be vacated," because the district court properly held that it lacked subject-matter jurisdiction over appellants' claims. We reject appellees' premise that they can invoke the district court's subject-matter jurisdiction to obtain an order disqualifying their opponents'

_____

(a)(1), we will instead consider the arguments that have been presented on his behalf, as we ultimately affirm the district court's dismissal of his claims.

10

counsel of choice, then effectively insulate the disqualification order from appellate review by arguing that their unrepresented opponents could not establish the district court's subject-matter jurisdiction. Moreover, as we explain below, the disqualification order is not "void," even under appellees' theory, because we ultimately conclude that the district court possessed subject-matter jurisdiction over some of Smith's claims. Consequently, we must evaluate—without briefing from appellees—whether the remaining appellants have shown reversible error in the disqualification order.

This Court has thoroughly addressed the remaining appellants' fifth issue in its opinion following the show-cause hearing, and we continue to adhere to that analysis.[20] We overrule their fifth issue.

As for the remaining appellants' third issue, it is, in substance, a complaint that the district court failed to file additional or amended findings of fact and conclusions of law. *See* Tex. R. Civ. P. 298. Rule 298 provides that, after a trial court files original findings of fact and conclusions of law, "any party may file with the clerk of the court a request for specified additional or amended findings or conclusions . . . within ten days after the filing of the original findings and conclusions by the court." *Id.* The district court filed its original findings and conclusions on April 19, 2005. The remaining appellants did not file a request for additional or amended findings

---

[20] *See Smith v. Abbott*, No. 03-06-00358-CV (Tex. App.—Austin 2007) (per curiam).

and conclusions within the required ten-day time period.[21] Consequently, they did not preserve their complaint. *See* Tex. R. App. P. 33.1(a). We overrule the remaining appellants' third issue.

The remaining appellants' fourth issue challenges the merits of the disqualification order.[22] Attorney disqualification "is a severe remedy," having the potential to cause "immediate harm by depriving a party of its chosen counsel and disrupting court proceedings." *In re Sanders*, 153 S.W.3d 54, 57 (Tex. 2004) (quoting *Spears v. Fourth Court of Appeals*, 797 S.W.2d 654, 656 (Tex. 1990) and citing *In re Nitla S.A. De C.V.*, 92 S.W.3d 419 (Tex. 2002)). Thus, the movant on a motion to disqualify bears a high burden, and must establish with specificity the basis for disqualification. *Spears*, 797 S.W.2d at 656. To meet this burden, "mere allegations of unethical conduct or evidence showing a remote possibility of a violation of the disciplinary rules will not suffice." *Id.* While the Texas Disciplinary Rules of Professional Conduct are not binding in such matters, courts often look to them as guidelines in determining whether attorney conduct warrants disqualification. *Henderson v. Floyd*, 891 S.W.2d 252, 253 (Tex. 1995); *Spears*, 797 S.W.2d at 656. However, "[e]ven if a lawyer violates a disciplinary rule, the party requesting disqualification must demonstrate that the opposing lawyer's conduct caused actual prejudice that requires

---

[21] The remaining appellants did complain in their "Motion to Reinstate Counsel" that "[t]he Court has failed to state either in her order of disqualification or in her findings of fact and conclusions of law any specific violation of the Texas Disciplinary Rules of Professional Conduct or of any other unethical act warranting this Draconian remedy." However, the remaining appellants did not file this document until December 1, 2005—over seven months after the original findings and conclusions were filed—and did not request any "specified additional or amended findings or conclusions" as required by rule 298.

[22] Although we previously denied the same relief in mandamus proceedings, these rulings were without comment on the merits and do not foreclose the remaining appellants from raising this complaint on appeal. *See Chambers v. O'Quinn*, 242 S.W.3d 30, 32 (Tex. 2007).

12

disqualification." *In re Nitla S.A. De C.V.*, 92 S.W.3d at 422. We review the district court's

disqualification ruling for abuse of discretion. *See Metropolitan Life Ins. Co. v. Syntek Fin. Corp.*,

881 S.W.2d 319, 321 (Tex. 1994).

Here, as noted, the Attorney General and the Division asserted three specific grounds

for disqualification: that Jackson violated rules 1.10(c) and 7.03 of the Texas Disciplinary Rules of

Professional Conduct, and that he also violated a separation agreement he had signed before leaving

the Attorney General's Office. Appellants requested, and the district court filed, findings of fact and

conclusions of law detailing the bases for disqualification. The findings of fact that are relevant to

our analysis are as follows:

> FOF 1: Plaintiffs' lawyer, Samuel T. Jackson ("Jackson"), is a former OAG employee. He left his governmental post in April 2004. Jackson worked for the OAG, first as the Director of the Child Support Litigation Division (1991), and subsequently as an Administrative Law Judge, Child Support Division (1996-2004).

> FOF 2: Upon separation from his governmental post, Jackson entered into an agreement with the OAG. The agreement contained the following affirmations: 1) I will decline representation in any license suspension or any other case prior to my official separation date of April 30, 2004, in which the Office of the Attorney General is a party; 2) I will decline representation in any license suspension case which was set on my docket while employed as an Administrative Law Judge for the Child Support Division; 3) I will decline representation in any license suspension cases in which I was knowingly[,] substantially[,] and personally involved, or in which I acquired confidential client information while an employee of the Office of Attorney General; and 4) In the event that I should unwarily accept representation on a case prohibited by this paragraph, I will immediately withdraw from such case as soon as it is brought to my attention. The agreement cited the disciplinary rules for private practice after government employment.

13

FOF 3:  The OAG maintains a proprietary confidential License Suspension Database. It was created and is maintained for the Office of the Attorney General, Child Support Division.

FOF 4:  Jackson knew or should have known that the License Suspension Database is proprietary and confidential.

FOF 5:  Jackson, when he left the employ of the OAG, took a copy of the OAG's proprietary confidential License Suspension Database.

* * *

FOF 7:  Jackson represents Brian Charles Smith, Robert Hammond, David Talton, and John Collins in this lawsuit against the OAG.

FOF 8:  Jackson obtained Smith's, Hammond's, Talton's and Collin's information from the proprietary confidential License Suspension Database.

FOF 9:  But for the use of the proprietary confidential License Suspension Database, Jackson would not have been able to solicit the plaintiffs as clients.

FOF 10:  Smith, Hammond's, Talton's and Collin's interest in this lawsuit are adverse to those of the OAG.

FOF 11:  Jackson violated the Texas Rules of Professional Conduct.

FOF 12:  Jackson's conduct causes actual prejudice to the OAG and requires disqualification.

The district court also made the following relevant conclusions of law:

COL 1:  Rule 1.15 of the Texas Rules of Professional Conduct requires a lawyer to withdraw from representation of a client "if . . . the representation will result in violation of other applicable rules of professional conduct or other law, . . . ."

COL 2:  Rule 1.10(c) of the Texas Rules of Professional Conduct provides that "a lawyer having information that the lawyer knows or should know

14

is confidential government information about a person or other legal entity acquired when the lawyer was a public officer or employee may not represent a private client whose interests are adverse to that person or legal entity.

The district court also made a finding that Jackson had made an unsuccessful, unsolicited telephone solicitation offering his services to an individual whose contact information Jackson had obtained from the database, as well as a corresponding conclusion of law quoting the language of rule 7.03. *See* Tex. Disc. R. Prof. C. 7.03 ("A lawyer shall not by . . . telephone . . . seek professional employment . . . from a prospective client or nonclient who has not sought the lawyer's advice regarding employment or with whom the lawyer has no family or past or present attorney-client relationship when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain"). However, because the district court made no finding as to how Jackson's unsuccessful telephone solicitation had caused actual prejudice to the movants, Jackson's disqualification must rest upon violations of the other legal standards that the movants alleged.

The remaining appellants do not dispute the district court's findings regarding Jackson's employment history with the Division, that Jackson took with him a copy of a password-protected internal Division database used to track Title IV-D license-suspension cases that he had obtained while working in the Division, or that Jackson subsequently used information from this database in successfully soliciting them as clients.[23] They challenge only whether these findings

---

[23] During the hearing, the movants called Jackson to testify. Jackson admitted that when he left the Division, he had taken with him copies of a password-protected database maintained within the Division that he had obtained while working there. He further admitted that it was from these copies of the database that he came to know of Smith, Hammond, Talton and Collins. Jackson further indicated that he sent letters to each of these individuals soliciting their business.

15

establish that Jackson violated rule 1.10(c). The remaining appellants first question whether the findings establish that the database information was "confidential government information" under the meaning of rule 1.10(c). "Confidential government information," as used in rule 1.10(c), "means information which has been obtained under governmental authority and which, at the time this rule is applied, the government is [1] prohibited by law from disclosing to the public or has a legal privilege not to disclose, and [2] which is not otherwise available to the public." *Id.* R. 1.10(g). In another case involving Jackson, we recently held that information concerning Title IV-D license-suspension proceedings maintained by the Attorney General's Office and SOAH is confidential by law. *See Jackson v. State Office of Admin. Hearings*, No. 03-07-00293-CV, 2009 Tex. App. LEXIS 5914, at *12 (Tex. App.—Austin, July 30, 2009, pet. filed) (not designated for publication). Consequently, the district court's fact findings establish that the database information satisfies the first prong of rule 1.10(c)'s "confidential government information" definition.

The remaining appellants urge that, nonetheless, the movants failed to establish the second prong of the definition—that the information was not otherwise available to the public. Moreover, even assuming the movants met that burden, the remaining appellants question how Jackson's use of information from the database about *them* in contacting them to offer his services *on their behalf*, as the district court found Jackson did, could run afoul of rule 1.10(c)'s prohibition against lawyers who acquire "confidential government information *about a person or other legal entity*" subsequently "represent[ing] a private client *whose interests are adverse to that person or legal entity*." *Id.* R. 1.10(c). The remaining appellants' argument finds support in an American Bar Association advisory opinion concerning ABA Model Rule 1.11(b), on which

rule 1.10(c) was modeled.  *See* ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 97-409 (1997), at 468 n.7 ("The term 'person' in Rule 1.11(b) does not include the former government client, but refers only to third parties whom the former government lawyer may oppose on behalf of a private party after leaving government service"), 470 ("Rule 1.11(b) comes into play only if the lawyer acquired 'confidential government information' about an adverse third party while in government service, and offers no protection to the former government client respecting its confidences").  We also observe that rule 1.10(c) presumes an attorney-client relationship between the lawyer and the former governmental client, whereas Jackson, as an ALJ, would be considered an "adjudicatory official" under the rules.  *See* Tex. Disciplinary R. Prof'l Conduct Terminology, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (West 2005) (Tex. State Bar R. art. X, § 9) (defining "adjudicatory official" and "tribunal"), 1.11 (conflict-of-interest restrictions applicable to "adjudicatory officials").

Even if the district court's findings do not support Jackson's disqualification under rule 1.10(c), they do establish a violation of Jackson's separation agreement that can support disqualification.  The district court found that Jackson agreed that, among other terms, he would "decline representation in all license suspension cases . . . in which [he] acquired confidential client information while an employee of the Office of the Attorney General."  The district court's findings establish that Jackson obtained confidential information about appellants from the database, *see Jackson v. State Office of Admin. Hearings*, No. 03-07-00293-CV, 2009 Tex. App. LEXIS 5914, at *1-2, and then proceeded to represent appellants in their license-suspension cases despite the

17

restriction.[24] That violation, together with the district court's findings that this conduct caused actual prejudice to the movants by enabling Jackson to sign up clients he otherwise could not have obtained to sue the Attorney General, supports the disqualification order. *See* Tex. Disciplinary R. Prof'l Conduct 1.15 (requiring that lawyers shall decline representation when the representation will result in lawyer violating "other law"). Accordingly, the district court did not abuse its discretion in disqualifying Jackson from representing the remaining appellants in their suit against the Attorney General and the Division. We overrule the remaining appellants' fourth issue.

In their sixth issue, the remaining appellants urge that even if the district court properly disqualified Jackson from representing them against the Attorney General and the Division, the district court nonetheless abused its discretion in extending the disqualification to their claims against SOAH. The remaining appellants emphasize that SOAH did not join in the original disqualification motion. We conclude that the district court did not abuse its discretion. Regardless which appellee they are asserted against, the remaining appellants' claims ultimately challenge the authority of the Attorney General and the Division to delegate certain of their statutory duties to SOAH. Consequently, Jackson's representation of the remaining appellants in pursuing those claims against SOAH would implicate the same grounds for disqualification as did their claims against the Attorney General and the Division. We overrule the remaining appellants' sixth issue.

---

[24] There were, however, no findings that Jackson had begun representing appellants before his official separation date of April 30, 2004, that appellants' license-suspension proceedings had been on his docket, or that he had been substantially involved in those cases.

18

**District court's subject-matter jurisdiction**

In the first issue stated in the "Appellants' Brief," Smith asserts that the district court erred in dismissing his claims on grounds of mootness. The second issue complains of the district court's dismissal of Collins, Hammond, and Talton's claims.

An assertion that a trial court lacks subject-matter jurisdiction over a claim may be raised through a plea to the jurisdiction. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The determination of whether the trial court has subject-matter jurisdiction begins with the pleadings. *See Miranda*, 133 S.W.3d at 226. The pleader has the initial burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Id.* (citing *Texas Ass'n of Bus.*, 852 S.W.2d at 446. Whether the pleader has met this burden is a question of law that we review de novo. *Id.* We construe the pleadings liberally and look to the pleader's intent. *Id.* We also assume the truth of the jurisdictional facts alleged in the pleadings unless the defendant presents evidence to negate their existence. *Id.* at 227 (citing *Blue*, 34 S.W.3d at 555). In resolving the jurisdictional challenges presented by the plea, we may also consider evidence that the pleader has attached to its petition or submitted in opposition to the plea. *See Blue*, 34 S.W.3d at 555.

If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *See Miranda*, 133 S.W.3d at 226-27. If the pleadings affirmatively negate the existence

19

of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend. *Id.* at 227.

### *Mootness*

In the first issue, Smith contends that appellees failed to demonstrate that his claims had been rendered moot after filing. Texas courts are prohibited from deciding moot controversies. *See Nat'l Collegiate Athletic Ass'n v. Jones*, 1 S.W.3d 83, 86 (Tex. 1999). This prohibition is rooted in separation-of-powers concepts and the prohibition against courts rendering advisory opinions. *See id.* A case becomes moot if a controversy ceases to exist or the parties lack a legally cognizable interest in the outcome. *See Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642 (Tex. 2005) (citing *Texas Bd. of Adjustment v. Wende*, 92 S.W.3d 424, 427 (Tex. 2002)). To demonstrate that Smith no longer has a legally cognizable interest in the case outcome, appellees relied on a January 2006 order that the Division had obtained from SOAH. The order states:

> The Office of the Attorney General of Texas, Petitioner, filed a Motion to Stay Order Suspending License on January 23, 2006, in the above styled case. Respondent, **BRIAN CHARLES SMITH**, has paid all delinquent child support, has established a satisfactory payment record, or good cause otherwise exists to stay the Decision and Order issued April 26, 2004, suspending Respondent's Driver's license number [redacted] issued by the Texas Department of Public Safety. The Administrative Law Judge concludes the motion should be granted.
>
> It is, therefore, **ORDERED** that the Motion to Stay Order Suspending License is **GRANTED**, and the order suspending Respondent's license(s) is hereby **STAYED**. The stay shall remain subject to a motion to revoke for noncompliance in accordance with Tex. Fam. Code Ann. § 232.012. This order shall be promptly delivered to the [sic] for observance. Upon payment of any fee required by the licensing agency under Tex. Fam Code Ann. § 232.014, the agency shall issue the affected license to **BRIAN CHARLES SMITH** if he is otherwise qualified for the license.

20

*See* Tex. Fam. Code Ann. § 232.013 (authorizing "Title IV-D agency" to "render an order vacating or staying an order suspending an individual's license" for "good cause" or if individual has paid all delinquent child support or "established a satisfactory payment record"). Appellees also presented a copy of the Division's motion, which reflected that Smith had entered into an agreed repayment schedule. Appellees reason that because this order allowed the return of Smith's driver's license, he no longer has a justiciable interest in any of his claims. We disagree.

Smith challenges the April 2004 order revoking his driver's license primarily on grounds that SOAH had no authority either to issue that order or to conduct the contested-case hearing that preceded the order. Smith seeks, among other relief, a judgment *vacating* this order and declarations that SOAH had no authority to issue it in the first place or to conduct the contested-case hearing that preceded it. The January 2006 order that the Division obtained, in contrast, does not vacate or void the April 2004 order, but merely *stays* it.[25] In other words, the underlying April 2004 order giving rise to Smith's controversy remains in effect—and can be enforced anew, as the January 2006 order states, if a motion to revoke the stay is filed. *See id.* § 232.012. Furthermore, the January 2006 order leaves Smith subject to administrative fees that can be imposed under family code section 232.014 on "an individual who is the subject of an order suspending license." *See id.* § 232.012. For these reasons, the January 2006 order did not obviate Smith's legally cognizable interest in his claims challenging the April 2004 order as beyond SOAH's authority, and they are not moot. *See Allstate Ins. Co.*, 159 S.W.3d at 642.

---

[25] We observe that the Division could have sought to vacate the order, but instead opted to request a stay. *See* Tex. Fam. Code Ann. § 232.013 (West 2008).

21

However, the record demonstrates that Smith's claim challenging appellees' calculation of interest on his child-support arrearages *is* moot. Smith's agreed repayment schedule, which is attached to the Division's motion to stay the April 2004 license-suspension order, reflects that Smith agreed he "owe[d] child support of $38,732.93, as of 01/16/2006," and that he would repay this amount through a lump-sum payment and a series of monthly payments until the balance was paid in full. There is no indication that Smith reserved any right to dispute the amount of his obligation. Smith's unqualified agreement to pay this amount was a final settlement and compromise of any dispute concerning the amount of his obligation at that time. *See Miga v. Jensen*, 96 S.W.3d 207, 211 (Tex. 2002). Further, Smith does not seek any prospective relief concerning the calculation of interest on child-support arrearages, nor would he have standing to do so, as the prospect that he will owe future child-support arrearages and that the Division will miscalculate them is too remote, contingent, and speculative to give rise to a justiciable claim. *See Williams v. Lara*, 52 S.W.3d 171, 183-85 (Tex. 2001).

Consequently, the district court did not err in dismissing Smith's claim concerning the calculation of interest he owes on his child-support arrearages. However, as appellants point out—and appellees concede—the district court erred in dismissing this claim "with prejudice." *See Ritchey v. Vasquez*, 986 S.W.2d 611, 612 (Tex. 1999) (dismissal for mootness). We will thus modify this portion of the district court's judgment to reflect that Smith's claim concerning interest on his child-support arrearages was dismissed without prejudice.

22

*Sovereign immunity*

In the district court, appellees asserted that sovereign immunity barred all of the remaining appellants' claims. Absent a statutory right to judicial review of the license-suspension orders, a suit challenging the orders is one to "control state action" and is barred by sovereign immunity, *see Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 198 (Tex. 2004); *Southwest Airlines Co. v. Texas High-Speed Rail Auth.*, 867 S.W.2d 154, 157 (Tex. App.—Austin 1993, no writ) (op. on reh'g), unless the orders were ultra vires of SOAH's statutory authority or unconstitutional. *See Texas Hwy. Comm'n v. Texas Ass'n of Steel Importers*, 372 S.W.2d 525, 530 (Tex. 1963); *Southwestern Bell Tel. Co. v. Public Util. Comm'n*, 735 S.W.2d 663, 668 (Tex. App.—Austin 1987, no writ).[26] APA section 2001.171 provides a statutory right of judicial review from administrative orders in contested-case proceedings, thereby waiving sovereign immunity as to claims within its scope. Tex. Gov't Code Ann. § 2001.171; *see Mega Child Care, Inc.*, 145 S.W.3d at 173. Smith pled a claim under APA section 2001.171, and there is no dispute that he complied with the statutory prerequisites for such a claim—he timely filed a motion for rehearing and, after it was denied, timely filed his suit for judicial review. *See* Tex. Gov't Code Ann. §§ 2001.146, .176 (West 2008). Consequently, sovereign immunity does not bar Smith from prosecuting his live claims for the relief provided under that section. This relief may include reversal of his license-suspension order on grounds that SOAH had no authority to issue it. *See* Tex. Gov't

---

[26] *See also Continental Cas. Ins. Co. v. Functional Restoration Assoc.*, 19 S.W.3d 393, 397 (Tex. 2000) (citing *Stone v. Texas Liquor Control Bd.*, 417 S.W.2d 385, 385-86 (Tex. 1967)) ("It is well recognized under Texas law that there is no right to judicial review of an administrative order unless a statute provides a right or unless the order adversely affects a vested property right or otherwise violates a constitutional right.").

Code Ann. § 2001.174(2) (court shall reverse agency order and remand for further proceedings if it is "in violation of a constitutional or statutory provision," "in excess of the agency's statutory authority," or "affected by other error of law").

On the other hand, Hammond, and Talton do not dispute that they failed to exhaust their administrative remedies and otherwise satisfy the statutory prerequisites for bringing a suit for judicial review under APA section 2001.171. Furthermore, it is impossible for Hammond or Talton to cure this jurisdictional defect at this juncture. Accordingly, the district court did not err in dismissing these claims "with prejudice." *See American Motorists Ins. Co. v. Fodge*, 63 S.W.3d 801, 805 (Tex. 2001).

In the second issue, Hammond and Talton complain that the district court erred in dismissing their UDJA claims on exhaustion grounds because these claims allege acts ultra vires of appellees' statutory authority, such that administrative exhaustion is not required. *See Westheimer Indep. Sch. Dist. v. Brockette*, 567 S.W.2d 780, 789 (Tex. 1978); *see also Southwestern Bell Tel. Co.*, 735 S.W.2d at 667 (observing that, "in the context of administrative proceedings, the court's jurisdiction under Uniform Declaratory Judgments Act has derived from its inherent power to hear and determine whether the agency action in controversy was ultra vires or unconstitutional"). Appellees respond that these claims do not actually allege ultra vires conduct and, thus, seek only to "control state action" by directing conduct within their statutory powers. While the parties join

this issue only with respect to Hammond, and Talton's UDJA claims, we observe that the same issue is presented by Smith's UDJA claims.[27]

The UDJA is not a general waiver of sovereign immunity; it "does not enlarge a trial court's jurisdiction, and litigant's request for declaratory relief does not alter a suit's underlying nature." *City of El Paso v. Heinrich*, 284 S.W. 3d 366, 370 (Tex. 2009). Consequently, sovereign immunity will bar an otherwise proper UDJA claim that has the effect of establishing a right to relief against the State for which sovereign immunity has not been waived. *See City of Houston v. Williams*, 216 S.W.3d 827, 828-29 (Tex. 2007) ("[P]rivate parties cannot circumvent the State's sovereign immunity from suit by characterizing a suit for money damages, such as a contract dispute, as a declaratory-judgment claim," and "if the sole purpose of such a declaration [regarding a governmental body's statutory authority] is to obtain a money judgment, immunity is not waived") (quoting *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 856 (Tex. 2002)); *Koch v. Texas Gen. Land Office*, 273 S.W.3d 451, 455 (Tex. App.—Austin 2008, pet. filed) (citing, as examples, UDJA claims that would establish State's contractual or tort liability). In the case of an ostensible ultra vires claim under the UDJA, as the Texas Supreme Court recently explained, the plaintiff "must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a

---

[27] Appellees have not contended that Smith's UDJA claims improperly seek a remedy redundant of his suit for judicial review under APA 2001.171. *See Strayhorn v. Raytheon E-Systems*, 101 S.W.3d 558, 572 (Tex. App.—Austin 2003, pet. denied); *see also Texas Mun. Power Agency v. Public Util. Comm'n*, 100 S.W.3d 510, 517-20 (Tex. App.—Austin 2003, pet. denied) (distinguishing between APA appeal of "a particular Commission order" and UDJA claim for "a determination of the Commission's general authority" that would resolve larger underlying controversy regarding its authority reflected in other agency proceedings).

purely ministerial act." *Heinrich*, 284 S.W.3d at 372. If the plaintiff, in fact, alleges or ultimately can prove only acts within the officer's legal authority and discretion, the claim seeks "to control state action," and is barred by sovereign immunity. *See id.* Appellees have challenged only whether appellants' pleadings allege acts beyond their statutory authority. We evaluate this issue by construing the relevant statutory or constitutional provisions defining appellees' authority and determine whether appellants have alleged acts outside that authority. *See Dir. of Dep't of Agric. & Env't v. Printing Indus. Ass'n of Tex.*, 600 S.W.2d 264, 265-70 (Tex. 1980); *Hendee v. Dewhurst*, 228 S.W.3d 354, 368-69 (Tex. App.—Austin 2007, pet. denied).

The remaining appellants have argued that they alleged facts that, if taken as true, would constitute conduct beyond appellees' statutory authority. They contend that, by pleading that SOAH rather than the Division adjudicated their license-suspension proceedings, they have alleged conduct that violates chapter 232 and the Attorney General's rules in effect at the time, which had designated "an administrative law judge designated by the Office of the Administrative Law Judge, Child Support Division," to both preside at the contested-case hearings and to issue final orders. 20 Tex. Reg. 5555 (codified at 1 Tex. Admin. Code § 55.208(a)); 25 Tex. Reg. 3232.[28] The remaining appellants characterize the Attorney General's delegation of these duties to SOAH

[28] Hammond and Talton do not appear to contend that their allegations regarding the "erroneous" calculation of interest on their child-support arrearages also allege ultra vires acts (apart from their complaint that the Division rather than SOAH should have heard and decided the matter). *See North Alamo Water Supply Corp. v. Texas Dep't of Health*, 839 S.W.2d 455, 459 (Tex. App.—Austin 1992, writ denied) ("The fact that the [agency] might decide 'wrongly' in the eyes of an opposing party does not vitiate the agency's jurisdiction to make an initial decision."). Instead, they appear to be asserting these claims under APA section 2001.171—and, again, they did not meet the statutory prerequisites to bring such a claim.

as an improper rule amendment without complying with the APA's requirements. Even if SOAH could conduct the hearings, the remaining appellants further assert, it had no statutory authority to render a final order. The remaining appellants emphasize section 232.004(d) of the family code, which provides that "[t]he director of the Title IV-D agency or the director's designee may render a final decision in a contested case proceeding under this chapter." Tex. Fam. Code Ann. § 232.004(d). They also point to SOAH's statute, chapter 2003 of the government code, which, they contend, does not authorize SOAH ALJs to render final orders in Title IV-D license-suspension proceedings. *See* Tex. Gov't Code Ann. § 2003.046 (West 2008).

Appellees respond that the family code authorized the Attorney General and the Division, to enter into contracts or agreements to effectuate their duties as Texas's "Title IV-D agency." They rely upon section 231.002:

Sec. 231.002. POWERS AND DUTIES.

(a)     The Title IV-D agency may:

. . .

        (4) enter into contracts or agreements necessary to administer this chapter.

. . .

(c)     The Title IV-D agency may enter into agreements or contracts with federal, state, or other public or private agencies or individuals for the purpose of carrying out the agency's responsibilities under federal or state law. The agreements or contracts between the agency and other state agencies or political subdivisions of this or another state, including a consortia of multiple states, and agreements or contracts with vendors for the delivery of

27

program services are not subject to Chapter 771[29] or 783,[30] Government Code.

Tex. Fam. Code Ann. § 231.002. The remaining appellants judicially admitted in their pleadings that the Attorney General and SOAH entered into an interagency contract in January 2004 whereby SOAH agreed to conduct all administrative Title IV-D child support hearings referred to it by the Attorney General.[31] Appellees conclude that section 231.002 provided independent statutory authority enabling the Attorney General and the Division to contractually transfer their authority to decide Title IV-D license-suspension cases, and that is what happened here.

Although appellees have demonstrated that the Attorney General and the Division have statutory authority to make contracts to effectuate and administer the functions of the "Title IV-D agency," this does not necessarily mean that SOAH had corresponding statutory authority to perform those functions, any more than any other third party. The issue of SOAH's authority to perform these functions is at the core of the remaining appellants' ultra vires claims.

---

[29] The Interagency Cooperation Act, Tex. Gov't Code Ann. §§ 771.001-010 (West 2004 & Supp. 2008).

[30] The Uniform Grant and Contract Management Act, Tex. Gov't Code Ann. §§ 783.001-010 (West 2004).

[31] Their petition alleges:

On January 8, 2004, under the authority of Tex. Fam. Code Ann. § 231.002(a)(4) and (c), the OAG entered into an interagency contract with SOAH. The contract purportedly delegated the OAG's authority to conduct contested case proceedings in the Title IV-D license suspension cases to SOAH. Pursuant to the interagency contract, SOAH has conducted administrative hearings in the Title IV-D cases referred to it from the OAG's Child Support Division since May 1, 2004.

28

Regarding SOAH's authority to conduct Title IV-D contested-case hearings for the Division, we observe that the legislature has authorized SOAH to "conduct, for a fee and under a contract, administrative hearings or alternative dispute resolution procedures in matters voluntarily referred to the office by a governmental entity." Tex. Gov't Code Ann. § 2003.021(b)(4) (West 2008). The conduct that appellants allege falls within SOAH's authority under this provision. We thus agree with appellees that the remaining appellants have not stated a valid ultra vires claim with respect to SOAH's conducting the contested-case hearing portions of the license-suspension proceedings. *See Heinrich*, 284 S.W.3d at 372; *McLane Co. v. Strayhorn*, 148 S.W.3d 644, 649 (Tex. App.—Austin 2004, pet. denied).

As for the remaining appellants' claims challenging the authority of SOAH ALJs to issue the final orders in those proceedings, they emphasize section 2003.042 of the government code, which enumerates the powers of SOAH ALJs:

Sec. 2003.042 POWERS OF ADMINISTRATIVE LAW JUDGE.

(a) An administrative law judge employed by the office or a temporary administrative law judge may:

  (1)  administer an oath;

  (2)  take testimony;

  (3)  rule on a question of evidence;

  (4)  issue an order relating to discovery or another hearing or prehearing matter, including an order imposing a sanction;

  (5)  issue an order that refers a case to an alternative dispute resolution procedure, determines how the costs of the procedure will be apportioned,

29

and appoints an impartial third party as described by Section 2009.053 to facilitate that procedure;

(6) issue a proposal for decision that includes findings of fact and conclusions of law;

(7) ***if expressly authorized by a state agency rule adopted under Section 2001.058(f),*** make the final decision in a contested case;

(8) serve as an impartial third party as described by Section 2009.053 for a dispute referred by an administrative law judge, unless one of the parties objects to the appointment; and

(9) serve as an impartial third party as described by Section 2009.053 for a dispute referred by a government agency under a contract.

(b) An administrative law judge may not serve as an impartial third party for a dispute that the administrative law judge refers to an alternative dispute resolution procedure.

Tex. Gov't Code Ann. § 2003.042 (West 2008) (emphasis added). The remaining appellants point out that subsection (a)(7) authorizes SOAH ALJs to "make the final decision in a contested case" only when "expressly authorized by a state agency rule adopted under Section 2001.058(f)." Section 2001.058(f) of the government code provides: "A state agency by rule may provide that, in a contested case before the agency that concerns licensing in relation to an occupational license and that is not disposed of by stipulation, agreed settlement, or consent order, the administrative law judge shall render the final decision in the contested case." *Id.* § 2001.058(f).

It is undisputed that, at the time relevant to these proceedings, the Attorney General had not adopted rules providing that SOAH ALJs would issue the final orders in Title IV-D license-suspension cases, as government code sections 2003.042(a) and 2001.058(f) require. Moreover, the driver's licenses at issue here are not occupational licenses, although Talton's order did also

suspend an occupational license, his barber's license. Consequently, appellants have alleged conduct by SOAH ALJs that falls outside their statutory authority under government code sections 2003.042 and 2001.058. Appellees have not presented any other basis—legal or evidentiary—for concluding that SOAH possessed statutory authority to issue final orders in the Title IV-D license-suspension proceedings involving the remaining appellants.[32] Thus, on this record, we conclude that the remaining appellants have stated a claim that SOAH acted ultra vires of its statutory authority in issuing final orders in these Title IV-D license-suspension proceedings.

Nevertheless, to determine whether the remaining appellants' UDJA claims are within the district court's subject-matter jurisdiction, we must also consider the independent sovereign-immunity implications of appellees' interagency contract. That is, even if the remaining appellants have stated an otherwise-valid ultra vires claim challenging whether SOAH had statutory authority to issue the final orders in their Title IV-D license-suspension proceedings, such a claim would nonetheless implicate sovereign immunity if the effect of the remedy they seek would be to invalidate a previously executed state contract. *See Texas Logos, L.P. v. Texas Dep't of Transp.*, 241 S.W.3d 105, 119-21 (Tex. App.—Austin 2007, no pet.) (citing *IT-Davy*, 74 S.W.3d at 856; *see also Williams*, 216 S.W.3d at 828-29. The remaining appellants each seek declarations invalidating the SOAH final orders in their respective license-revocation proceedings on the basis that SOAH lacked authority to issue them. The effect of such a ruling would be to hold the interagency contract invalid. As the remaining appellants have not alleged or demonstrated a waiver

---

[32] For example, the interagency contract is not in our record.

31

of sovereign immunity as to their UDJA claims challenging the SOAH final orders, these claims are barred by sovereign immunity. *See Texas Logos, L.P.*, 241 S.W.3d at 119-21.

In addition to this retrospective relief concerning previously issued final orders, the remaining appellants also sought prospective relief to restrain SOAH from issuing final orders in future license-revocation proceedings. On rehearing, the Attorney General emphasizes that he has since enacted rules purporting to delegate authority to SOAH to render final orders in Title IV-D license-revocation cases, *see* 30 Tex. Reg. 7427 (2005), and urges that these rules moot the remaining appellants' claims for prospective relief. However, the remaining appellants have pled that no such rules could validly delegate to SOAH authority to revoke non-occupational licenses when government code 2001.058(f) authorized delegations of such functions to SOAH solely in contested-case hearings that "concern[] licensing in relation to an occupational license." Tex. Gov't Code Ann. § 2001.058(f). Nonetheless, leaving aside whether the remaining appellants could challenge the validity of these rules through the UDJA (as opposed to government code section 2001.038), none of them have alleged a justiciable interest that would confer standing to do so. The sole interests the remaining appellants allege are the final orders SOAH previously issued in their license-revocation proceedings, not the prospect of any future proceedings against them. *See Williams*, 52 S.W.3d at 183-85; *see also Texas Commerce Bank v. Grizzle*, 96 S.W.3d 240, 255-56 (Tex. 2002). Consequently, the district court did not err in granting appellees' plea to the jurisdiction as to the remaining appellants' UDJA claims.

**CONCLUSION**

We have held the following:

- We lack subject-matter jurisdiction to grant appellate relief to Collins.

- The district court did not abuse its discretion in disqualifying Jackson.

- The district court erred in dismissing Smith's suit for judicial review under APA section 2001.171, with the exception of Smith's claim regarding interest on his child-support arrearages, which is moot and was properly dismissed.

- The district court did not err in dismissing Hammond and Talton's suit for judicial review under APA section 2001.171 because they failed to comply with statutory prerequisites to suit under this provision.

- The district court did not err in dismissing the remaining appellants' UDJA claims.

In light of these holdings, we affirm the district court's order disqualifying Jackson. However, we reverse the district court's judgment dismissing Smith's APA claims (except for the moot interest-related claim, which was properly dismissed), and remand those claims to the district court for further proceedings. Further, we affirm the district court's ruling that it lacked jurisdiction as to the remaining appellants' UDJA claims and Hammond and Talton's APA claims.

The remaining appellants have requested that, if we affirm the dismissal of any of their claims, we modify the judgment to afford them the opportunity to cure the jurisdictional defects by repleading or that we modify the dismissals of Smith's moot interest-related claim and Hammond and Talton's APA claims to reflect they are without prejudice. Appellants are not entitled to leave to replead a claim unless it is possible they could cure the jurisdictional defect that was the basis for dismissing the claim. *See Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839-40 (Tex. 2007).

33

Repleading cannot possibly cure Hammond and Talton's failure to meet the statutory prerequisites for their APA claims, nor is it possible at this juncture for them to cure the jurisdictional defect as a factual matter. Consequently, the district court properly dismissed these claims with prejudice. *See Fodge*, 63 S.W.3d at 805. Nor can repleading cure the jurisdictional defects in the remaining appellants' UDJA claims, and the district court properly dismissed the claims without affording leave to replead. However, the district court erred in dismissing Smith's moot interest-related claim "with prejudice." *See Ritchey*, 986 S.W.2d at 612. We thus modify the judgment dismissing the interest-related claim to substitute "without prejudice" for "with prejudice."

_____

Bob Pemberton, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed in part; Modified and, as Modified, Affirmed in part; Reversed and Remanded in part on Motion for Rehearing

Filed: February 26, 2010