ACCEPTED
15-24-00114-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
8/25/2025 5:41 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-24-00114-CV

# In the Fifteenth Court of Appeals
# Austin, Texas

FILED IN
15TH COURT OF APPEALS
AUSTIN, TEXAS
8/25/2025 5:41:08 PM
CHRISTOPHER A. PRINE
Clerk

CECILE ERWIN YOUNG, in her Official Capacity as the Executive Commissioner of the Texas Health and Human Services Commission; MOLINA HEALTHCARE OF TEXAS, INC.; AETNA BETTER HEALTH OF TEXAS, INC.,

*Appellants*,

*v.*

COOK CHILDREN'S HEALTH PLAN, TEXAS CHILDREN'S HEALTH PLAN, SUPERIOR HEALTH PLAN, INC., and WELLPOINT INSURANCE COMPANY,

*Appellees*.

On Appeal from the 353rd Judicial District of Travis County,
No. D-1-GN-24-003839

## MOLINA HEALTHCARE OF TEXAS, INC.'S RESPONSE TO APPELLEES' MOTIONS FOR TEMPORARY RELIEF

**SCOTT DOUGLASS &
McCONNICO LLP**

JASON R. LAFOND
State Bar No. 24103136
CHERYL JOSEPH LAFOND
303 Colorado Street, Suite 2400
Austin, TX 78701
(512) 495-6300
jlafond@scottdoug.com

*Counsel for Appellant Molina Healthcare of Texas, Inc.*

# Table of Contents

**Page**

Table of Authorities ................................................................................................ iii

Introduction ............................................................................................................. 1

Background ............................................................................................................... 2

    A.  Medicaid and CHIP ..................................................................................... 2

    B.  STAR and CHIP Managed Care................................................................. 2

    C.  The STAR CHIP procurement ................................................................... 3

        1.  The preexisting STAR and STAR CHIP contracts ........................... 4

        2.  Reprocuring the STAR CHIP contracts ............................................ 7

            a.  Procurement reform ..................................................................... 7

            b.  The current procurement ............................................................. 8

            c.  This lawsuit ................................................................................ 10

Argument ................................................................................................................11

I.  The Court Lacks Jurisdiction to Replicate the District Court's
Injunction.......................................................................................................... 12

    A.  The Court's original jurisdiction is insufficient because there is
no risk of mootness. ...................................................................................13

    B.  Rule 29.3 does not apply because the Losing Plans have no rights
to protect. ....................................................................................................16

    C.  The Court's inherent authority is not a source of jurisdiction. ................. 21

II.  No Court Has Jurisdiction to Enjoin These Procurements............................. 23

    A.  The Losing Plans' claims are unripe because their administrative
appeals remain pending............................................................................. 24

    B.  HHSC retains exclusive jurisdiction over the Losing Plans'
challenges to the procurements because the Losing Plans have
not exhausted administrative remedies. .................................................... 27

        1.  The exclusive jurisdiction doctrine applies............................................. 28

        2.  There is no loophole for the Losing Plans' ultra vires claims. ............. 30

Conclusion and Prayer ...........................................................................................31

Certificate of Compliance ............................................................................... 33

**APPENDIX**

**Tab**

   **1**      Print-outs from LBB Contracts Database

# Table of Authorities

**Page(s)**

## Cases

*Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*,
397 U.S. 150 (1970) ................................................................................. 19

*Cash Am. Int'l Inc. v. Bennett*,
35 S.W.3d 12 (Tex. 2000) ......................................................................... 27

*Chafin v. Chafin*,
568 U.S. 165 (2013) .................................................................................. 15

*City of Anson v. Harper*,
216 S.W.3d 384 (Tex. App.—Eastland 2006, no pet.) ......................................... 27

*City of Austin v. Travis Cent. Appraisal Dist.*,
506 S.W.3d 607 (Tex. App.—Austin 2016, no pet.) ........................................... 29

*City of Hous. v. Rhule*,
417 S.W.3d 440 (Tex. 2013) ..................................................................... 27

*City of Laredo v. Martin*,
52 Tex. 548 (1880) .................................................................................. 22

*Coyne-Delany Co. v. Cap. Dev. Bd. of State of Ill.*,
616 F.2d 341 (7th Cir. 1980) ..................................................................... 16

*CPS Energy v. ERCOT*,
671 S.W.3d 605 (Tex. 2023) ..................................................................... 29

*Eichelberger v. Eichelberger*,
582 S.W.2d 395 (Tex. 1979) ..................................................................... 22

*Elview Constr. Co. v. N. Scott Cmty. Sch. Dist.*,
373 N.W.2d 138 (Iowa 1985) ................................................................... 18

*HealthAmerica Corp. of Ky. v. Humana Health Plan, Inc.*,
697 S.W.2d 946 (Ky. 1985) ....................................................................... 18

*Henderson v. Shinseki*,
562 U.S. 428 (2011) .................................................................................. 15

*HHSC v. Sacred Oak Med. Ctr. LLC*,
2021 WL 2371356 (Tex. App.—Austin 2021) ................................................. 21

*Holt & Co. v. Wheeler Cnty.*,
235 S.W. 226 (Tex. App.—Amarillo 1921, writ dism'd w.o.j.) ...........................17

*In re Abbott*,
601 S.W.3d 802 (Tex. 2020) ....................................................... 23

*In re Abbott*,
645 S.W.3d 276 (Tex. 2022)..............................................16, 19, 21, 23

*In re Entergy Corp.*,
142 S.W.3d 316 (Tex. 2004) ....................................................... 29

*In re Geomet Recycling LLC*,
578 S.W.3d 82 (Tex. 2019) .........................................................22

*In re Lasik Plus of Texas, P.A.*,
2013 WL 816674 (Tex. App.—Houston [14th Dist.] 2013, orig.
proceeding) ...........................................................................13

*In re Smith*,
2004 WL 254079 (Tex. App.—Waco 2004, orig. proceeding) ...........................13

*In re State*,
711 S.W.3d 641 (Tex. 2024) ..................................................... 12, 24

*In re TEA*,
619 S.W.3d 679 (Tex. 2021) ..................................................... 11, 12

*In re Teague*,
2006 WL 302123 (Tex. App.—Fort Worth 2006, orig. proceeding) ...................13

*J.P. Mascaro & Sons, Inc. v. Bristol Twp.*,
505 A.2d 1071 (Pa. Cmwlth. Ct. 1986) ............................................. 18

*Jennings v. Carson*,
220 S.W. 1090 (Tex. [Comm'n App.] 1920) ......................................... 30

*La. Env't Action Network v. City of Baton Rouge*,
677 F.3d 737 (5th Cir. 2012)......................................................15

*Madison v. Martinez*,
42 S.W.2d 84 (Tex. App.—Dallas 1931, writ ref'd) ............................... 23

*MCNA Ins. Co. v. Dep't of Tech., Mgmt. & Budget*,
929 N.W.2d 817 (Ct. App. Mich. 2019) .............................................17

*MOAC Mall Holdings LLC v. Transform Holdco LLC*,
598 U.S. 288 (2023) ..............................................................15

iv

*Morath v. Lewis*,
  601 S.W.3d 785 (Tex. 2020) ....................................................................... 12

*N. Alamo Water Supply Corp. v. Tex. Dep't of Health*,
  839 S.W.2d 455 (Tex. App.—Austin 1992, writ denied) ................................30, 31

*Parsons v. Galveston Cnty. Emp. Credit Union*,
  576 S.W.2d 99 (Tex. App.—Houston [1st Dist.] 1978, orig. proceeding) ....... 13, 16

*Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*,
  971 S.W.2d 439 (Tex. 1998) ..................................................................... 24, 27

*Perkins v. Lukens Steel Co.*,
  310 U.S. 113 (1940) ...........................................................................17, 18, 19

*Red River Holdings, LLC v. United States*,
  87 Fed. Cl. 768 (2009) .............................................................................. 20, 28

*Shalala v. Ill. Council on Long Term Care, Inc.*,
  529 U.S. 1 (2000) ........................................................................................ 27

*Smith v. Abbott*,
  311 S.W.3d 62 (Tex. App.—Austin 2010, pet. denied) ...................................... 30

*Sowell's Meats & Servs., Inc. v. McSwain*,
  788 F.2d 226 (4th Cir. 1986) ...................................................................17

*State ex rel. Mid-Mo. Limestone, Inc. v. Cnty. of Callaway*,
  962 S.W.2d 438 (Mo. Ct. App. 1998) ...................................................................17

*State v. Harris County*, No. 15-24-00120-CV (Tex. App.—15th Court 2024) ........ 21

*State v. Morales*,
  869 S.W.2d 941 (Tex. 1994) ..................................................................... 12, 22

*TEA v. Cypress-Fairbanks ISD*,
  830 S.W.2d 88 (Tex. 1992) ........................................................................... 30

*TEA v. Hous. ISD*,
  609 S.W.3d 569 (Tex. App.—Austin 2020) ...................................................... 21

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.*,
  852 S.W.2d 440 (Tex. 1993) ...................................................................15

*Tex. Emp. Ins. Ass'n v. Kirby*,
  150 S.W.2d 123 (Tex. App.—Dallas 1941, orig. proceeding) ..............................22

*Tex. Emp. Ins. Ass'n v. Kirby*,
   152 S.W.2d 1073 (Tex. 1941) ........................................ 22

*Tex. Highway Comm'n v. El Paso Bldg. & Const. Trades Council*,
   234 S.W.2d 857 (1950) ................................................17

*Tex. State Bd. of Examiners in Optometry v. Carp*,
   343 S.W.2d 242 (Tex. 1961) ........................................ 30

*Waters-Pierce Oil Co. v. State*,
   106 S.W. 326 (Tex. 1907) ............................................ 22

*Weber v. Walker*,
   591 S.W.2d 559 (Tex. App.—Dallas 1979, orig. proceeding) ................................13

*Webster v. Comm'n for Law. Discipline*,
   704 S.W.3d 478 (Tex. 2024) ........................................ 26

*Westheimer ISD v. Brockette*,
   567 S.W.2d 780 (Tex. 1978) ........................................ 30

*Wilson v. Cmty. Health Choice Tex., Inc.*,
   607 S.W.3d 843 (Tex. App.—Austin 2020, pet. denied) ..............................14, 21

## Constitutional Provisions

Tex. Const. art. V,
   § 6(a) ...........................................................................13
   § 8 .............................................................................. 27

## Statutes

42 U.S.C. ch. 7, subch. XXI; 42 C.F.R. pt. 457 ....................... 2

Act of June 2, 2025, 89th Leg., R.S., S.B. 1, art. IX,
   § 17.09(b)(4) ............................................................... 3
   § 17.09(e) .................................................................... 5

Act of May 29, 2023, 88th Leg., R.S., ch. 1170, § 1, art. IX,
   sec. 17.09(b)(4) ............................................................ 3
   sec. 17.09(e) ................................................................. 5

Act of May 31, 2021, 87th Leg., R.S., ch. 1053, § 1, art. IX,
   sec. 17.09(b)(4) ............................................................ 3
   sec. 17.09(e) ................................................................. 5

Tex. Gov't Code
   § 22.221(a).............................................................. 13, 21

§ 522.0051 ............................................................................. 19

§ 525.0101 ............................................................................. 28

§ 532.0051 .......................................................................... 3, 28

§§ 523.0051(b), 523.053 ..................................................... 19

§§ 544.0101, 544.0103(d), 544.0109 ................................... 8

§ 2155.076 ..................................................................... 9, 29, 30

§ 2155.144 ............................................................................ 28

§ 2155.144(c)–(d), (n) .......................................................... 3

§§ 2155.144(f); 2155.326 .................................................... 19

§ 2155.144(n) ......................................................................... 3

§ 2155.324 ............................................................................ 19

§ 2262.101 ............................................................................ 19

Tex. Health & Safety Code

§ 62.051(a) ............................................................................. 3

§ 62.155(a) ........................................................................ 3, 28

Tex. Loc. Gov't Code § 252.061(2) ..................................... 21

## REGULATIONS

1 Tex. Admin. Code

§§ 391.101(d), 391.209(5) .................................................... 8

§ 391.107(6) .......................................................................... 19

§ 391.303(b) ................................................................ 9, 24, 31

§ 391.305(a)(1) ....................................................................... 9

§§ 391.305(c), 391307(c)–(d) ............................................. 31

§ 391.307(c)(2)–(3), (d)(3) ................................................. 26

§ 391.307(d) ................................................................... 10, 25

§ 391.309 .......................................................................... 9, 31

34 Tex. Admin. Code § 20.162(a) ......................................... 19

42 C.F.R.

§ 430.0 .................................................................................... 2

pt. 438 ..................................................................................... 2

§ 438.62(a) .............................................................................. 6

pt. 456, subpt. L ..................................................................... 2

pt. 457 ..................................................................................... 2

## RULES

Tex. R. App. P. 29.3 .............................................................. 16

## Other Authorities

Lewis J. Baker, *Procurement Disputes at the State and Local Level: A Hodgepodge of Remedies*, 25 Pub. Cont. L.J. 265 (1996) ................................. 18

*Contracts for Stationery*, 6 Op. Att'ys Gen. 226 (1853), 1853 WL 2192 .................... 17

Kenneth Culp Davis, *Administrative Law Doctrines of Exhaustion of Remedies, Ripeness for Review, and Primary Jurisdiction: 1*, 28 Tex. L. Rev. 168 (1949) ................................................................................................... 27

HHSC Contract No. 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-00002, https://tinyurl.com/5n79scud .......... 4, 5

HHSC Contract No. 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-00006; https://tinyurl.com/2w979v7v ............. 4

HHSC Contract No. 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-00007, https://tinyurl.com/yyk4ztte ............ 4, 5

HHSC Contract No. 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-00014, https://tinyurl.com/32j954cv ................ 4

HHSC Contract No. 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-00015, https://tinyurl.com/5e7kfv8j ................ 4

HHSC Contract No. 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-00019, https://tinyurl.com/3rr56sjv ................ 4

HHSC, *Request for Public Comment on Best Value Criteria for STAR & CHIP Managed Care Procurement* (Apr. 28, 2022), https://tinyurl.com/2zshb6j5 .......... 8

Gary L. Hopkins, *The Universe of Remedies for Unsuccessful Offerors on Federal Contracts*, 15 Pub. Cont. L.J. 365 (1985) ...................................................... 20

Mem. from HHSC Deputy Executive Commissioner of Managed Care Re: Managed Care Contract Extension and Bridge Extensions (Jan. 5, 2023), https://tinyurl.com/mr234skf ........................................................................ 6

Mem. from HHSC Re: Contract 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-00014 (Jan. 17, 2025), https://tinyurl.com/bdd5dv5u ................................................................. 6, 7

Mem. from HHSC Re: Contract 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-00019 (Jan. 17, 2025), https://tinyurl.com/4zsrbvv5 .................................................................... 6, 7

O'Connor's Texas Civil Appeals ch. 10-D § 5 (2025) .......................... 22

RFP for HHSC Medicaid and CHIP Managed Care Services, No. 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 (Apr. 8, 2011), https://tinyurl.com/y7fc39yt ............................................. 4

**To the Honorable Fifteenth Court of Appeals:**

The Losing Plans collectively have taken in well over $100 billion in taxpayer money under their long-expired STAR and STAR CHIP contracts with HHSC. This lawsuit has already netted them billions more, forcing HHSC to enter unwanted and unauthorized bridge contracts with the Losing Plans without *any* competitive procurement. All while this lawsuit blocks HHSC from completing the underlying reprocurement that's been going on for nearly a decade.

Now, the Losing Plans ask this Court to enjoin that reprocurement. But the Losing Plans do *not* allege or try to prove that the result of some perfect procurement would have been any different or any better for them. They simply want the procurement stopped for as long as possible. Why? Because another round of unwanted and unauthorized multibillion-dollar bridge contracts is on the horizon if this case drags on. The Losing Plans win by losing slowly.

Enough is enough. The Court should deny the Losing Plans' motions for an injunction pending appeal for a host of reasons. This response focuses on the Court's power—or not—to issue the requested injunction and antecedent jurisdictional defects in the Losing Plans' claims. The many reasons why the Losing Plans' ultra vires claims fail to overcome sovereign immunity and why the Losing Plans satisfied none of the requirements for a temporary injunction in the district court will be fully addressed in forthcoming merits briefing.

This Court should reject the Losing Plans' motions because the Court lacks the power to issue the requested injunction: The Court's jurisdiction isn't at risk, Rule 29.3 doesn't apply because disappointed bidders like the Losing Plans have no rights to protect here, and any additional inherent authority the Court may have doesn't include issuing injunctions to protect parties pending appeal. Even more, no court has jurisdiction to issue any injunction: The Losing Plans' claims aren't yet ripe, and HHSC still has exclusive jurisdiction over this dispute. The Losing Plans' claims fail out of the gate.

## Background

### A. Medicaid and CHIP

Medicaid "authorizes Federal grants to States for medical assistance to low-income persons who are age 65 or over, blind, disabled, or members of families with dependent children or qualified pregnant women or children." 42 C.F.R. § 430.0. CHIP (Children's Health Insurance Fund) is like Medicaid, but uses federal grants to assist States in providing health insurance for children in families that earn too much money to qualify for Medicaid but cannot afford to buy private insurance. *See* 42 U.S.C. ch. 7, subch. XXI; 42 C.F.R. pt. 457.

### B. STAR and CHIP Managed Care

Benefits under both Medicaid and CHIP may be provided through a managed care model. *See generally* 42 C.F.R. pt. 438 (Medicaid); *id.* pt. 456, subpt. L (CHIP). Under these programs, HHSC contracts with managed care organizations (MCOs)

who operate health plans in one or more of 13 service delivery areas in Texas. *See* 9RRPX92.001. The MCOs' relationship to Medicaid and CHIP beneficiaries is like that of private insurers to their insureds.

### C. The STAR CHIP procurement

HHSC has express authority to "enter into contracts as necessary to perform any of the commission's powers or duties." Tex. Gov't Code § 525.0101. HHSC also "is the state agency designated to administer federal Medicaid funds," and is expressly granted authority—without condition or reservation—to "plan and direct Medicaid, including the management of the Medicaid managed care system and the . . . procurement . . . of contracts necessary to implement that system." *Id.* § 532.0051. HHSC additionally has express authority to administer CHIP. Tex. Health & Safety Code § 62.051(a). And that includes the authority, without condition or reservation, to "select the health plan providers under the program through a competitive procurement process." *Id* § 62.155(a).

More specifically, HHSC has the duty and thus the authority to "[e]nsure that contract award decisions are determined based on best value criteria established in solicitation documents." Act of June 2, 2025, 89th Leg., R.S., S.B. 1, art. IX, § 17.09(b)(4)[1]; *see also* Tex. Gov't Code § 2155.144(c)–(d), (n) (directing HHSC to procure for best value); *id.* § 2155.144(n) (providing, with exceptions not relevant

---

[1] *Accord, e.g.*, Act of May 29, 2023, 88th Leg., R.S., ch. 1170, § 1, art. IX, sec. 17.09(b)(4), 2023 Tex. Gen. Laws 3573, 4510 (same); Act of May 31, 2021, 87th Leg., R.S., ch. 1053, § 1, art. IX, sec. 17.09(b)(4), 2021 Tex. Gen. Laws 2805, 3694 (same).

here, "[t]o the extent of any conflict, this section prevails over any other state law relating to the procurement of goods and services").

Exercising that express authority, HHSC has procured and is attempting to reprocure contracts necessary to implement the STAR, CHIP, and STAR Kids programs.

### 1. The preexisting STAR and STAR CHIP contracts

The MCOs' current STAR and STAR CHIP contracts originated in 2011. *See* 5RR255:17–24.[2] Each judicially noticeable contract consists of nearly uniform terms.[3] Cook Children's is representative. Cook Children's contracted with HHSC in September 2011. *See* HHSC Contract No. 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-00002 at 1. The term of the contract goes through August 31, 2015, with extensions available through February 29, 2020. Contract at 1, pt. 2 (initial term; operational start date of March 1, 2012); *id.*, attachment A at 15, § 3.02 ("The Parties may renew the Contract for an additional period or periods, but the Contract Term may not exceed a total of eight (8) operational years.").

---

[2] *See also* RFP for HHSC Medicaid and CHIP Managed Care Services, No. 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 (Apr. 8, 2011), https://tinyurl.com/y7fc39yt. All web addresses cited in this brief were last visited August 25, 2025.

[3] A copy of each judicially noticeable contract in the Legislative Budget Board's Contract Database. *See* HHSC Contract No. 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-00002, https://tinyurl.com/5n79scud (Cook Children's); HHSC Contract No. 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-00006; https://tinyurl.com/2w979v7v (Bankers Reserve Life Insurance Co. of Wisconsin d.b.a. Superior HealthPlan Network); HHSC Contract No. 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-00007, https://tinyurl.com/yyk4ztte (Superior); HHSC Contract No. 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-00014, https://tinyurl.com/32j954cv (Texas Children's); HHSC Contract No. 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-00015, https://tinyurl.com/5e7kfv8j (Wellpoint, née Amerigroup); HHSC Contract No. 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-00019, https://tinyurl.com/3rr56sjv (same).

The contracts expressly contemplate that different contractors may take over when the contracts' term expires. *See id.*, attachment B-1, § 9 ("Turnover Requirements"). The Turnover Requirements, for instance, include the MCO developing a plan "that will assure . . . [t]he least disruption in the delivery of Covered Services to Members during the transition to a subsequent contractor." *Id.*, attachment B-1, §§ 9.2, 9.4.[4] Thus, HHSC ensures that beneficiaries maintain continuity of care even when managed care plans change a result of reprocurement. *Contra, e.g.*, Superior Mot. 19 (conflating continuity of care with continuity of MCO); Children's Plans Mot. 38–39 (same).

Despite the initial term of the contracts expiring years ago, these contracts now remain on life support through annual renewals. *See* 6.RR.145:16–146:7. The Legislature has repeatedly expressed its displeasure with resuscitating government contracts for additional terms not contemplated in the underlying agreement. *See* Act of June 2, 2025, *supra*, art. IX, § 17.09(e) ("It is the intent of the Legislature that agencies and institutions minimize the use of extensions that extend a contract beyond the base term and any optional extensions provided in a contract.").[5] And so the Legislature has restricted extensions of expired contracts to no more than one year. *See id.*

---

[4] The copy of Superior's contract maintained by LBB does not include attachment B-1, which reproduces sections from the RFP. But the contract references that attachment and expressly incorporates those RFP sections into the contract. *See* HHSC Contract No. 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-00007, at 8–9, pt. 10.

[5] *Accord, e.g.*, Act of May 29, 2023, *supra*, art. IX, sec. 17.09(e), 2023 Tex. Gen. Laws at 4511 (same); Act of May 31, 2021, *supra*, art. IX, sec. 17.09(e), 2021 Tex. Gen. Laws at 3695 (same).

Yet HHSC has been forced to repeatedly renew these expired contracts many times while it tries to reprocure new contracts.[6] As Commissioner Young explained:

> "[A]s a matter of fact, I'm in violation of an appropriation bill rider that says I can't extend a contract past one year. And I have – we've had to extend and extend and extend these contracts in violation of that."[7]

The most recent bridge renewals were executed in early 2025 and keep these contracts alive through August 31, 2026.[8]

These expired STAR and STAR CHIP contracts and their renewals have been extremely valuable for the Losing Plans. By the end of the current renewal, Superior and its parent will have received nearly **$60 billion** in taxpayer money.[9] Wellpoint, over **$45 billion**. Texas Children's, over **$18 billion**. And Cook Children's, nearly

---

[6] Without the bridge contracts, HHSC would be immediately responsible for ensuring beneficiaries' medical care. *See* 42 C.F.R. § 438.62(a) (requiring HHSC to "arrange for Medicaid services to be provided without delay to any Medicaid enrollee of an MCO . . . the contract of which is terminated and for any Medicaid enrollee who is disenrolled from an MCO . . . for any reason other than ineligibility for Medicaid").

[7] 6.RR.145:16–146:7; *see also, e.g.*, Mem. from HHSC Deputy Executive Commissioner of Managed Care Re: Managed Care Contract Extension and Bridge Extensions at 2 (Jan. 5, 2023), https://tinyurl.com/mr234skf ("Extending the expiration dates of the current managed care contracts is necessary to ensure managed care organizations continue to provide services to eligible Medicaid and CHIP members until new contracts are awarded.").

[8] *See, e.g.*, Mem. from HHSC Re: Contract 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-00019 (Jan. 17, 2025), https://tinyurl.com/4zsrbvv5; Mem. from HHSC Re: Contract 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-00014 (Jan. 17, 2025), https://tinyurl.com/bdd5dv5u.

[9] The judicially noticeable value HHSC has reported for each MCO contract may be found in the Legislative Budget Board's contracts catabase, http://contracts-archive.lbb.texas.gov/, by selecting "2015" from the "Fiscal Year" drop-down menu, inputting the contract number into the "Contract Id" box, and clicking "Search" at the bottom of the page. Screenshots are provided in the accompanying Appendix.

**$6 billion**. And each round of bridge renewals is worth ***billions more*** to the Losing Plans.[10]

If history is a guide, another round of multi-billion-dollar bridge contracts is coming in early 2026 for the 2026–27 fiscal year.

### 2. Reprocuring the STAR CHIP contracts

#### a. Procurement reform

The current dispute arises from HHSC's latest attempt to reprocure contracts with MCOs to administer STAR and CHIP. Prior procurement failures led to a complete overhaul of HHSC's procurement apparatus, with a special focus on managed care procurements. *See, e.g.* 6RR194:9–23; 9RRPX19.007–13. The new process would be much more systematic; the goal "was to create a replicable and defensible process to be applied throughout the [managed care] portfolio." 6RR197:1–3. It would be more focused on HHSC's vision for what was needed for Medicaid and CHIP. *See* 9RRPX116.001. It would closely coordinate among divisions, including to develop the MCO-solicitation's best value criteria, scope of work, and technical questions, and to ensure that evaluators were assigned to technical questions within their expertise. 6RR201:12–202:25, 203:25–204:8.

HHSC's reform effort was collaborative and transparent. All the parts of that large agency worked together. *See* 6RR195:1–9, 203:7–18. HHSC brought in the Comptroller, the State Auditor, and HHSC's inspector general (an independent

---

[10] *See, e.g.*, memos cited *supra*, n.8, each at page 1.

office filled by the Governor[11]), to review its procurement processes. *See* 9RRPX148.015. Then, HHSC brought in private experts to do the same. *See id.* Special focus was placed on managed care procurements, with Mercer Health and Benefits, a well-respected insurance consultant, evaluating and making recommendations for improvements. *See* 9RRPX19 (Mercer report). Mercer made numerous recommendations, and HHSC adopted nearly every one. *See* 9RRPX116.

And then HHSC staff met with MCOs, including the Losing Plans, in "presolicitation meetings, so to speak, where the managed care organizations could come in and look at [HHSC's] best value criteria and give us feedback on that criteria." 6RR198:5–199:3; 6RR195:22–196:3. HHSC also released the proposed best value criteria for general public comment.[12]

### b. The current procurement

One of the results of that collaborative process was the STAR CHIP and STAR Kids RFPs that began the procurements at issue here.[13] The STAR CHIP RFP transparently advised that evaluation would be guided by HHSC's conception of best value: "HHSC shall make an award to the Respondent that, ***in HHSC's sole determination, provides the best value*** to the State of Texas as set out in this Solicitation." 9RRPX38.021 (emphasis added); *see* 1 Tex. Admin. Code §§ 391.101(d) (best value),

---

[11] *See, e.g.*, Tex. Gov't Code §§ 544.0101, 544.0103(d), 544.0109.

[12] *See* HHSC, *Request for Public Comment on Best Value Criteria for STAR & CHIP Managed Care Procurement* (Apr. 28, 2022), https://tinyurl.com/2zshb6j5; *see also* 6RR196:4–6.

[13] "The STAR Kids RFP is nearly identical to the STAR & CHIP RFP." Superior Mot. 12.

391.209(5) (best value). And the RFP clearly set out how best value would be measured. *See* 9RRPX38.025–26, 33–40; *see also* 9RRPX290 (sample scoring rubric included with RFP); 12RRDX54 (RFP scope of work). HHSC planned to have new STAR CHIP contracts in place by February 2025. *See* 9RRPX38.010.

HHSC's regulations require that any protest to the terms of an RFP be filed before responses are due. 1 Tex. Admin. Code § 391.305(a)(1). Here, only one Losing Plan filed a pre-submission protest, which was limited to a single RFP provision. *See* 9RRPX44. The other issues the Losing Plans now assert were apparent from the outset, *see, e.g.*, Superior Mot. 7–8, 13–15, but they chose not to raise them at the proper time and instead submitted proposals without objections.

HHSC issued a notice of intended awards, and the Losing Plans were disappointed to learn that HHSC had not selected them, either at all, or in as many of their preferred service delivery areas as they had hoped. *See* 9RRPX95. It was only after HHSC announced the selections that the Losing Plans raised a laundry list of objections to the procurement. *See* 9RRPX155, 157–59; 1 Tex. Admin. Code § 391.303(b). As its regulations direct, HHSC paused finalizing the STAR CHIP contracts to hear those protests. *See* 1 Tex. Admin. Code § 391.309.

HHSC has unrestricted authority and discretion to resolve the merits of protests. *See* Tex. Gov't Code § 2155.076. HHSC's Deputy Executive Commissioner for Procurement and Contracting Services denied the Losing Plans' protests, and then the Losing Plans exercised their option to appeal that denial to Commissioner

9

Young. *See* CR.3315 n.1, 3529, 4249–50, 4264, 4717 n.2; *see also* 1 Tex. Admin. Code § 391.307(d). Those appeals remain pending.

### c. This lawsuit

Around the same time they filed their respective administrative appeals, the Losing Plans sued to enjoin Commissioner Young from deciding them—that is, "taking action . . . to further the procurement . . . processes for the STAR & CHIP RFP" and the STAR Kids RFP. CR.5883 (temporary injunction order drafted by the Losing Plans and signed by the district court).

The Losing Plans' lawsuits attempt to convert their administrative protest grounds into ultra vires theories. Citing various procurement standards and events during the procurement process, they "allege that [Commissioner Young] administered the RFP in a manner that violates Texas law and that, consequently, any award, execution, or implementation of the intended STAR & CHIP managed care contracts . . . will constitute *ultra vires acts*." CR.5876; *see* 5877–78 (list of grievances). They challenge the pending STAR KIDS RFP on similar grounds. *See* CR.5878–79.

The Losing Plans' petitions do not claim, and they never tried to prove, that any of the errors they allege prejudiced them or caused the result of the STAR CHIP procurement to be any different than it would have been had the alleged errors not occurred. They seek permanent injunctive relief that merely freezes the reprocurement, *see, e.g.*, CR.3339–40, 3556, 4276, 4279, 4763. Such an injunction will force HHSC to continue unauthorized bridge contracts, and allow the Losing Plans to

continue receiving billions in taxpayer funds without any competitive procurement of any kind.

After "a week-long evidentiary hearing," Wellpoint Mot. 6, in which high-ranking HHSC officials were forced to justify the agency's contracting decisions, the district court denied Commissioner Young's plea to the jurisdiction and entered a sweeping temporary injunction:

> It is further ORDERED that Plaintiffs' Applications for Temporary Injunction are GRANTED. The Court ORDERS that:
>
> - Defendant, and all other persons or entities in active concert or participation with Defendant, shall refrain from awarding, signing, entering into, executing, implementing, or otherwise taking action to effectuate or perform any contracts resulting from or in connection with the STAR & CHIP RFP or to further the procurement or contracting processes for the STAR & CHIP RFP; and
>
> - Defendant, and all other persons or entities in active concert or participation with Defendant, shall refrain from further proceeding with the procurement of, issuing a notice of intent to award or awarding contracts under, or otherwise implementing results from the STAR Kids RFP.

The State and Molina, after intervening, appealed. The State's notice of appeal superseded the temporary injunction.

## ARGUMENT

The Losing Plans ask the Court to "reinstate the trial court's injunction," Superior Mot. 25, and "to continue the temporary injunction ordered by the trial court," Wellpoint Mot. 2; *accord* Children's Plans Mot. 14. But the orders the Losing Plans ask this Court to issue "are neither procedurally nor functionally equivalent" to the district court's injunction. *In re TEA*, 619 S.W.3d 679, 689 (Tex. 2021). Any

11

order by the Court would "not" be "the reinstatement of the trial court's order; rather, it is a new order" of this Court. *Id.* So this Court must satisfy itself that an injunction is appropriate—the district court's views and findings are irrelevant. *See, e.g.*, *In re State*, 711 S.W.3d 641, 646–48 (Tex. 2024) (issuing injunction refused by the district court and by the court of appeals).

The injunction the Losing Plans request is inappropriate because this Court lacks the power to issue the asked-for injunction. And even if it had the power, no injunction is appropriate because the Losing Plans' claims fail: Their claims aren't ripe, and HHSC maintains exclusive jurisdiction over this dispute.

## I.  The Court Lacks Jurisdiction to Replicate the District Court's Injunction.

Like any other relief, "jurisdiction must exist before [an injunction] can issue." *State v. Morales*, 869 S.W.2d 941, 947 (Tex. 1994) (citation omitted). And "the need for courts to mind their jurisdictional bounds is perhaps at its greatest in cases" like this, "involving questions of public importance, where the potential for undue interference with the other two branches of government is most acute." *Morath v. Lewis*, 601 S.W.3d 785, 789 (Tex. 2020).

The Losing Plans offer three sources of authority for this Court to enjoin Commissioner Young and those who would perform contracts for HHSC: original jurisdiction, Texas Rule of Appellate Procedure 29.3, and the Court's inherent authority. *E.g.*, Superior Mot. 1; Wellpoint Mot. 3; Children's Plans' Mot. 7. None suffices.

12

Thus, the Losing Plans' motion fails and the Court may deny it without reaching any other issue.

### A. The Court's original jurisdiction is insufficient because there is no risk of mootness.

Courts of Appeals have original jurisdiction only "as may be prescribed by law." Tex. Const. art. V, § 6(a). The Legislature has given courts of appeals original jurisdiction to issue a writ of injunction only as "necessary to enforce the jurisdiction of the court." Tex. Gov't Code § 22.221(a). In practice, this limit means that, while courts of appeals "have no power to issue original writs solely to protect a party from damage pending appeal," or to preserve the status quo, they "may grant them to preserve the subject matter pending appeal and prevent the case from becoming moot." *Parsons v. Galveston Cnty. Emp. Credit Union*, 576 S.W.2d 99, 99 (Tex. App.—Houston [1st Dist.] 1978, orig. proceeding); *In re Lasik Plus of Texas, P.A.*, 2013 WL 816674, at *1 (Tex. App.—Houston [14th Dist.] 2013, orig. proceeding) (Busby, J., sitting); *accord, e.g.*, *In re Teague*, 2006 WL 302123, at *1–2 (Tex. App.—Fort Worth 2006, orig. proceeding) (similar).[14]

---

[14] *See also, e.g.*, *In re Smith*, 2004 WL 254079, at *1 (Tex. App.—Waco 2004, orig. proceeding) ("We lack jurisdiction to issue the writ. Andrea argues that an injunction would best preserve the status quo pending appeal and would prevent hardship to her. Neither argument brings her petition within our writ jurisdiction."); *Weber v. Walker*, 591 S.W.2d 559, 561 (Tex. App.—Dallas 1979, orig. proceeding) ("We do not . . . have jurisdiction to replace Judge Walker's injunction with our own because our jurisdiction is limited to issuing injunctions in situations where the failure to do so would render the appeal moot.").

As the Children's Plans recognize, enjoining Commissioner Young from finishing the procurements and enjoining the Commissioner and others from performing the resulting contracts is *not* necessary to prevent mootness. Children's Plans' Mot. 18.[15] That's because the Losing Plans seek to enjoin not only completing the procurement, *see Wilson v. Cmty. Health Choice Tex., Inc.*, 607 S.W.3d 843, 848 (Tex. App.—Austin 2020, pet. denied), but also performing the resulting contracts, *see* CR.5883. Performing the contracts will go on "for at least the next six—and potentially up to twelve—years." Children's Plans' Mot. 10. Indeed, even after the award, there's a lengthy transition period before new awardees would take over from incumbents. *See* CR.951 (award date and operational date). There's no chance that this appeal will become moot before the Court has a chance to decide its merits, so the Court has no original jurisdiction to issue an injunction.

Even so, the Losing Plans invoke this Court's original jurisdiction because, if the Commissioner performs the acts sought to be enjoined, she would "creat[e] new facts in furtherance of her plea" to the jurisdiction; i.e., transform the Losing Plans' requested relief from prospective to "retrospective." Wellpoint Mot. 9–10; *see also* Superior Mot. 30 (complaining that "Superior could be deprived of its primary remedy: a declaration that the Executive Commissioner will act *ultra vires* should she

---

[15] The Children's Plans nonetheless complain that Commissioner Young may somehow "insulate the procurement from judicial review." Children's Plans Mot. 18. But it was the Legislature, not Commissioner Young, that insulated the procurement from judicial review.

execute or attempt to implement the contract awards and an injunction to prevent that *ultra vires* action").

But changing the nature of the Losing Plans' claims doesn't have anything to do with this Court's jurisdiction to review the district court's appealed orders. "So long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Dierlam v. Trump*, 977 F.3d 471, 476–77 (5th Cir. 2020); *cf. Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993) ("Because standing is a constitutional prerequisite . . . under both federal and Texas law, [Texas courts] look to the more extensive jurisprudential experience of the federal courts on this subject for any guidance it may yield."). And the Losing Plans don't suggest that they or the appellants would lose interest in the outcome of this litigation should Commissioner Young complete the procurement and the Winning Plans begin performing the resulting contracts. *See* CR.5883 (enjoining performance of the contracts). The Losing Plans' focus on the viability of their claims "and the legal availability of a certain kind of relief—confuses mootness with the merits." *Chafin v. Chafin*, 568 U.S. 165, 174 (2013); *accord MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288, 295 (2023).[16]

---

[16] Courts have worked to discipline the use of the "jurisdiction" label over the past two decades. *See MOAC*, 598 U.S. at 298.[16]. The gist: "[C]ourts should not attach the 'jurisdictional' label lightly, because" branding some alleged defect jurisdictional "'alters the normal operation of our adversarial system.'" *La. Env't Action Network v. City of Baton Rouge*, 677 F.3d 737, 746 (5th Cir. 2012) (per curiam) (quoting *Henderson v. Shinseki*, 562 U.S. 428, 434 (2011)).

The Court's original jurisdiction doesn't allow for injunctions to freeze the *merits* vel non of a party's case. *See, e.g.*, *Parsons*, 576 S.W.2d at 99 (courts of appeals "have no power to issue original writs solely to protect a party from damage pending appeal"). Because the Court's appellate jurisdiction is not at risk, original jurisdiction cannot support the requested injunction.

## B. Rule 29.3 does not apply because the Losing Plans have no rights to protect.

The bulk of the Losing Plans' motions attempt to justify their requested injunction under Texas Rule of Appellate Procedure 29.3. *See* Superior Mot. 1, 4, 23–33; Wellpoint Mot. 3, 12–21; Children's Plans Mot. 2, 14–41. Rule 29.3 says "the appellate court may make any temporary orders ***necessary to preserve the parties' rights***" (emphasis added). That language "plainly limits the scope of the available relief." *In re Abbott*, 645 S.W.3d 276, 282–83 (Tex. 2022).

Rule 29.3 can't supply authority for the injunction the Losing Plans request because no temporary order is necessary to "preserve" the Losing Plans' "rights." Tex. R. App. P. 29.3. "A bidder on a government contract has ***no legally enforceable rights*** against the award of the contract to a competitor other than those the government has seen fit to confer." *Coyne-Delany Co. v. Cap. Dev. Bd. of State of Ill.*, 616 F.2d 341, 342–43 (7th Cir. 1980) (emphasis added). The Legislature has not

conferred any rights on the Losing Plans in the Medicaid and CHIP procurement process.[17]

Supreme Court precedent makes clear that, "[l]ike private individuals and businesses, the Government enjoys the unrestricted power to . . . determine those with whom it will deal." *Tex. Highway Comm'n v. El Paso Bldg. & Const. Trades Council*, 234 S.W.2d 857, 860 (1950) (quoting *Perkins v. Lukens Steel Co.*, 310 U.S. 113, 127 (1940)).

*Texas Highway Commission* touched on several issues, but, here, the most important holding is that legislative directives instructing agencies how to go about procuring goods and services are "***not intended to be a bestowal of litigable rights*** upon those desirous of selling to the Government." *Id.* (emphasis added). Those statutes do not depart from "the traditional principle of leaving purchases necessary to the operation of our Government to administration by the executive branch of Government, with adequate range of discretion free from vexatious and dilatory restraints at the suits of prospective or potential sellers." *Id.*[18] That precedent forecloses an injunction under Rule 29.3.

---

[17] The Children's Plans (at 18) mention "appellate rights," but those rights aren't at stake because (1) they're not appealing anything; (2) no one's appellate rights aren't at risk; *see supra*, Part I.A.1; and (3) if the procurement doesn't go their way, they have no right to "appeal" that result from HHSC because the Legislature has not provided for judicial review.

[18] *Cf.*, *e.g.*, *Holt & Co. v. Wheeler Cnty.*, 235 S.W. 226, 228–29 (Tex. App.—Amarillo 1921, writ dism'd w.o.j.) ("The advantage to the bidder is no part of the design of the statute, and no such right is created in his favor as forms the subject of an action at law or of a suit in equity." (citing authorities)); *Contracts for Stationery*, 6 Op. Att'ys Gen. 226, 226–27 (1853), 1853 WL 2192 (disappointed bidder could not challenge Secretary of Interior's determination of who was the lowest

The details of *Lukens Steel*, whose reasoning the Supreme Court of Texas endorsed and adopted, help show why the Losing Plans are in the wrong forum. Prospective bidders on federal contracts sued, alleging that agencies were not correctly applying a statutory procurement requirement. *See* 310 U.S. at 116–17. A lower court granted the bidders' request for an injunction, finding the enjoined officials "'disregard[ed] the statutory mandate.'" *Id.* at 125.

The Supreme Court of the United States reversed, holding that a procurement standard does not create "enforceable rights." *Id.* at 129. The Court explained—and the Supreme Court of Texas later agreed—that when the Legislature "lay[s] down guide posts by which its agents are to proceed in . . . procurement," it does so "for the purpose of keeping its own house." *Id.* at 127. A procurement standard thus

---

bidder); *Sowell's Meats & Servs., Inc. v. McSwain*, 788 F.2d 226, 228 (4th Cir. 1986) ("Ordinarily, in the absence of state law creating a property interest in a disappointed bidder for state contracts, the bidder lacks standing to question the award of the contract."); *MCNA Ins. Co. v. Dep't of Tech., Mgmt. & Budget*, 929 N.W.2d 817, 820 (Ct. App. Mich. 2019) ("[B]ecause petitioner had no expectancy to be awarded the contract, it cannot demonstrate an injury arising from the failure to be awarded the contract."); *State ex rel. Mid-Mo. Limestone, Inc. v. Cnty. of Callaway*, 962 S.W.2d 438, 441 (Mo. Ct. App. 1998) ("The rejection of Appellants' bid does not give them an enforceable private right."); *J.P. Mascaro & Sons, Inc. v. Bristol Twp.*, 505 A.2d 1071, 1073 (Pa. Cmwlth. Ct. 1986) ("[A] disappointed bidder has sustained no injury which entitles him to redress in court, even if the public official who refuses to award him the contract has a statutory obligation to award it to the lowest bidder."); *HealthAmerica Corp. of Ky. v. Humana Health Plan, Inc.*, 697 S.W.2d 946, 948 (Ky. 1985) ("It has long been Kentucky law that absent a showing of fraud, collusion or dishonesty, a disappointed bidder has no standing to judicially challenge the award of a public contract to another bidder."); *Elview Constr. Co. v. N. Scott Cmty. Sch. Dist.*, 373 N.W.2d 138, 141 (Iowa 1985) ("The general rule governing a challenge to bidding procedures is that an unsuccessful bidder lacks standing to bring a suit challenging their legality."); Lewis J. Baker, *Procurement Disputes at the State and Local Level: A Hodgepodge of Remedies*, 25 PUB. CONT. L.J. 265, 291 (1996) ("[E]xcept in those states, cities, or counties where a modern procurement code has been enacted, procedural and substantive remedies for the disappointed bidder or offeror at the state and local levels of government may be elusive.").

"create[s] duties to the Government alone." *Id.* It "is a self-imposed restraint for violation of which the Government—but not private litigants—can complain." *Id.* Refusing to treat the government different from a private purchaser and the government official different from a private purchasing agent, the Court emphasized that, "[f]or erroneous construction of his instructions, given for the sole benefit of the principal, the agent is responsible to his principal alone because his misconstruction violates no duty he owes to any but his principal." *Id.* at 129. "The Secretary's responsibility is to superior executive and legislative authority," not to contractors. *Id.*[19]

So too here. The Losing Plans complain that Commissioner Young failed to properly give statutory "preferences" or properly "consider" or apply various statutory procurement factors. *E.g.*, Superior Mot. 13–15; Wellpoint Mot. 16; Children's Plans' Mot. 4. But none of the cited statutes bestows any rights on the Losing Plans. Each is directed at HHSC and the Commissioner, who exercises discretion without judicial interference, and instead answers to the Governor,[20] the Legislature,[21] the

---

[19] At the time of *Lukens Steel*, no rights meant no standing. *See* 310 U.S. at 129. Courts have since become more restrictive in their use of the term, and thus find "standing" even in the absence of an enforceable right. *See, e.g.*, *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 & n.1 (1970). But Rule 29.3 is limited to preserving "rights," so the fact that the Losing Plans may have standing even in the absence of rights is irrelevant. *See In re Abbott*, 645 S.W.3d at 283.

[20] *See* 9.RR.PX208.1–2 (HHSC organizational chart); Tex. Gov't Code §§ 523.0051(b), 523.053 (HHSC executive commissioner must be reappointed by the Governor every two years).

[21] *See* Tex. Gov't Code §§ 523.0051(b), 523.053 (HHSC executive commissioner must be confirmed by the Senate every two years).

Attorney General,[22] the Comptroller,[23] the State Auditor,[24] and the cross-agency Contract Advisory Team[25]. Indeed, the Legislature is actively overseeing *this procurement. See, e.g.*, 9RRPX148. Those government actors—not the Losing Plans through litigation—keep the government's house.

Comparing events on the federal level since *Lukens* and in Texas since *Texas Highway Commission* removes any doubt that the Losing Plans have no rights to preserve. Unlike in Texas, federal protest litigation is now common, because Congress has authorized aggrieved federal bidders to seek judicial review of certain procurement decisions, including in specialized courts. *See Red River Holdings, LLC v. United States*, 87 Fed. Cl. 768, 793–94 (2009) ("[B]id protests are relatively new judicial or congressional creations. Historically, a disappointed government contract bidder had no right to dispute the award of a contract to another."); *see generally* Gary L. Hopkins, *The Universe of Remedies for Unsuccessful Offerors on Federal Contracts*, 15 Pub. Cont. L.J. 365, 366 (1985).

The Texas Legislature has done things differently. In the 75 years since *Texas Highway Commission*, the Legislature has repeatedly reformed its procurement laws. But it hasn't turned state procurement standards into enforceable rights or otherwise

---

[22] *See* Tex. Gov't Code § 522.0051.

[23] *See* Tex. Gov't Code § 2155.324.

[24] *See* Tex. Gov't Code §§ 2155.144(f), 2155.326.

[25] *See* Tex. Gov't Code § 2262.101; 34 Tex. Admin. Code § 20.162(a); *see also* 1 Tex. Admin. Code § 391.107(6) ("Contract Advisory Team--An interagency oversight team responsible for reviewing and making recommendations on the solicitation documents for state agency contracts in accordance with Texas Government Code, Chapter 2262, Subchapter C.")

engaged disappointed bidders in enforcing state law. Maintaining traditional principles of non-interference in state procurements was intentional. We know that because, at the same time, the Legislature has given disappointed bidders for *municipal* public works contracts a statutory right to enforce procurement laws. *See* Tex. Loc. Gov't Code § 252.061(2). The Legislature chose to treat state procurement differently, and that choice controls here.[26]

## C. The Court's inherent authority is not a source of jurisdiction.

The Losing Plans also invoke the Court's "inherent authority" as a basis for their requested injunction. Superior Mot. 23; Wellpoint Mot. 12; Children's Plans Mot. 16. But the Court's inherent authority doesn't allow an injunction here. "The Court has the inherent authority to issue orders *necessary or proper to preserve its jurisdiction during the pendency of an appeal*." Order, *State v. Harris County*, No. 15-24-00120-CV (Tex. App.—15th Court Dec. 6, 2024) (emphasis added) (citing Tex.

---

[26] The Austin Court's decision in *Wilson*, cited by the Losing Plans for various points, isn't contrary precedent. That case didn't concern a procurement standard; the statute there directed HHSC to "contract with" publicly sponsored hospital district plans in certain circumstances. 607 S.W.3d at 847. The court affirmed the denial of a plea of jurisdiction by an MCO seeking to enjoin HHSC's executive commissioner from issuing a contract award that didn't include such an MCO. *Id.* at 848, 855. The parties there simply assumed the "mandatory contract" statute provided an enforceable right to the MCO, and this issue was never raised. Indeed, the briefing on the substance of the plaintiff's ultra vires claim was limited to the meaning of the statute at issue. *See* Appellant's Br., *Wilson*, No. 03-20-00153-CV, 2020 WL 2061373, at *27–38 (Apr. 14, 2020). Decisions are precedent only for issues raised and squarely addressed. *See, e.g.*, *Mitschke v. Borromeo*, 645 S.W.3d 251, 256 (Tex. 2022) (explaining that stare decisis applies to decisions resolving "materially indistinguishable question[s]").

Gov't Code § 22.221(a)). As already shown, there's no chance of mootness. So the Court's inherent authority to preserve its jurisdiction isn't activated.[27]

More fundamentally, inherent authority is not a source of jurisdiction; it's in aid of jurisdiction already existing. *See id.* Thus, a court's inherent authority cannot extend beyond its jurisdiction. *See Eichelberger v. Eichelberger*, 582 S.W.2d 395, 399–400 (Tex. 1979); *Morales*, 869 S.W.2d at 947. The Court's original jurisdiction to issue injunctions doesn't extend beyond "preserv[ing] its jurisdiction, because original jurisdiction to issue injunctive relief generally lies with the trial courts." *In re Geomet Recycling LLC*, 578 S.W.3d 82, 90 (Tex. 2019); *see generally* O'Connor's Texas Civil Appeals ch. 10-D § 5 (2025). The same must hold for a court's inherent authority grounded in original jurisdiction.

And the same holds for inherent authority grounded in appellate jurisdiction. The Supreme Court has held, for example, that it lacks inherent power in exercising its appellate jurisdiction to appoint a receiver unless necessary to protect its jurisdiction. *See Waters-Pierce Oil Co. v. State*, 106 S.W. 326, 331 (Tex. 1907). And it has held that, while exercising "appellate" jurisdiction—just as when exercising original jurisdiction—a "court is ***not*** invested by the Constitution and laws with such general

---

[27] The Losing Plans cite some Austin Court decisions describing its supposed inherent authority to preserve parties' rights. *See, e.g.*, Superior Mot. 23 (citing *HHSC v. Sacred Oak Med. Ctr. LLC*, 2021 WL 2371356 (Tex. App.—Austin 2021)); Children's Plans' Mot. 16–17 (citing *TEA v. Hous. ISD*, 609 S.W.3d 569 (Tex. App.—Austin 2020)). But those decisions were just applying Rule 29.3, not any independent inherent authority. And, in *In re Abbott*, the Supreme Court made clear that the Austin Court's power, inherent or otherwise, doesn't extend beyond Rule 29.3's text. *See* 645 S.W.3d at 282–83.

powers as would enable it to protect the parties from damage during the pendency of the appeal." *City of Laredo v. Martin*, 52 Tex. 548, 553–54 (1880); *accord, e.g.*, *Tex. Emp. Ins. Ass'n v. Kirby*, 152 S.W.2d 1073, 1073 (Tex. 1941) (adopting *Tex. Emp. Ins. Ass'n v. Kirby*, 150 S.W.2d 123 (Tex. App.—Dallas 1941, orig. proceeding), which explained that a "Court of Civil Appeals" lacks the power "to issue . . . any writ other than as authorized by the statutes conferring original jurisdiction"). It follows that "[t]his court cannot grant a temporary writ of injunction for the purpose of preventing damages that would otherwise flow to a litigant who has a pending appeal in this court. That power rests exclusively with the district judge." *Madison v. Martinez*, 42 S.W.2d 84, 86 (Tex. App.—Dallas 1931, writ ref'd).[28]

\* \* \*

This Court has no power to grant the injunction the Losing Plans demand. It should deny their motions.

## II. No Court Has Jurisdiction to Enjoin These Procurements.

Even putting aside the jurisdictional defects specific to this Court, authority for the Losing Plans' requested injunction is absent because *no court* may enjoin the ongoing procurements. A court that lacks jurisdiction cannot order "relief, even temporarily." *In re Abbott*, 601 S.W.3d 802, 805 (Tex. 2020) (per curiam). The district

---

[28] The Supreme Court hasn't yet considered whether *City of Laredo* limits relief available under Rule 29.3. *See In re Abbott*, 645 S.W.3d at 282 n.6. So Molina limits this argument to the Court's inherent authority.

court should have dismissed the Losing Plans' claims, and so this Court should deny their motions.

Jurisdiction is broadly lacking for at least two reasons: ***One***, the Losing Plans' claims are unripe and thus not justiciable because complete relief is still available through administrative remedies. ***Two***, HHSC has exclusive jurisdiction over this dispute, at least until the Losing Plans exhaust administrative remedies.

Molina's forthcoming merits brief will show that no district court will ever have jurisdiction to hear the Losing Plans' claims because sovereign immunity bars them, and therefore the Court should render judgment dismissing the Losing Plans' claims with prejudice. For now, the ripeness and exclusive jurisdiction doctrines sufficiently show that the Losing Plans' claims cannot succeed, and thus that no injunction is appropriate. *See In re State*, 711 S.W.3d at 645.

## A. The Losing Plans' claims are unripe because their administrative appeals remain pending.

"[A]voiding premature litigation prevents courts from 'entangling themselves in abstract disagreements over administrative policies' while at the same time serving to 'protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 443 (Tex. 1998) (citation omitted). The ripeness doctrine thus withholds subject matter jurisdiction when "the case involves 'uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id.* at 442 (citation omitted).

24

The Losing Plans protested HHSC's procurement awards. *See* CR.3315 n.1, 4717 n.2, 4249–50, 4264; 1 Tex. Admin. Code § 391.303(b). Those protests presented exactly the same arguments the Losing Plans presented in the district court and present here in their motions. *See, e.g.*, CR.3324–25, CR.3641–3720, CR.4515–64, 4627–31, 4769–4819; 9RRPX155, 157–59. HHSC's Deputy Executive Commissioner for Procurement and Contracting Services denied those protests. *See* 9RRPX155, 157–59.

The Losing Plans exercised their option to appeal that denial to Commissioner Young; *see* CR.3315 n.1, 3529, 4249–50, 4264, 4717 n.2; 1 Tex. Admin. Code § 391.307(d). But rather than let Commissioner Young decide the appeals, the Losing Plans contemporaneously sued Commissioner Young. And then they obtained an injunction forbidding Commissioner Young from "taking action . . . to further the procurement . . . processes for the STAR & CHIP RFP." CR.5883.

The Losing Plans' administrative appeals thus remain outstanding and unresolved, but not prejudged, as Commissioner Young explained:

> A. . . . [A]ssuming the Court will allow me to move forward, I would then finish the appeals process, the review of the appeals, and make a decision, one or the other, on each of the individual appeals. And then once that process is finished, then I would move forward. . . . Depending on how those appeals come out.
>
> Q. So you're not going to sign any contracts until you decide the appeals?
>
> A. That's correct.
>
> Q. And in deciding the appeal -- the appeals, you, yourself, still need to determine whether the State complied with the law --
>
> A Yes.

> Q -- in relation to this procurement?
> A Yes, sir.[29]

The Court must presume that Commissioner Young will consider the Losing Plans' appeals with an open mind and resolve them in line with the law. *See Webster v. Comm'n for Law. Discipline*, 704 S.W.3d 478, 488 (Tex. 2024) (discussing presumption of good faith).

The Losing Plans' pending appeals before Commissioner Young mean their claims against her are not ripe. The Losing Plans insist that "[*i*]*f* the Executive Commissioner authorizes HHSC to execute contracts based on the intended contract awards, her action will be *ultra vires*." Superior Mot. 2 (emphasis added). They worry that the Commissioner "*could* move forward with awarding, executing and implementing new contracts." Wellpoint Mot. 10 (emphasis added). And they openly seek to "foreclose even the *possibility*" that the Commissioner might "reject[] their internal appeals." Children's Plans Mot. 18 (emphasis added).

The Losing Plans' feared ultra vires acts and resulting harm are facially contingent on Commissioner Young denying their appeals. "Depending on how those appeals come out," 6RR132:14, the Losing Plans could face no harm at all. If Commissioner Young accepts the Losing Plans' arguments in their administrative appeals (the same arguments the Losing Plans press here), she may award appropriate relief, including cancelling the procurement, *see* 1 Tex. Admin. Code § 391.307(c)(2)–(3),

---

[29] 6RR132:7–23.

(d)(3)—exactly what the Losing Plans hope to accomplish with an injunction, *see, e.g.*, CR.4185–86.[30]

Only if Commissioner Young denies the Losing Plans' appeals will any action "awarding, executing, or implementing new contracts" occur. Wellpoint Mot. 10. But "the possibility" that the Commissioner might "reject[] their internal appeals," Children's Plans Mot. 18, represents just the type of "uncertain or contingent future event[] that may not occur as anticipated, or indeed may not occur at all" that keeps a case from being ripe, *Patterson*, 971 S.W.2d at 442; *see, e.g.*, *City of Anson v. Harper*, 216 S.W.3d 384, 395 (Tex. App.—Eastland 2006, no pet.) (injury that depends on uncertain administrative action is not ripe).[31]

### B. HHSC retains exclusive jurisdiction over the Losing Plans' challenges to the procurements because the Losing Plans have not exhausted administrative remedies.

The Constitution provides that the Legislature may confer "exclusive, appellate, or original jurisdiction . . . on [an] administrative body." Tex. Const. art. V, § 8. In turn, "[w]hen the Legislature grants an administrative agency sole authority to make an initial determination in a dispute, agency jurisdiction is exclusive." *City*

---

[30] That relief has been achieved in similar procurement protests. *See* 5RR180:1–181:1.

[31] These same concerns underlie the requirement that a person aggrieved by an administrative act exhaust administrative remedies before suing. *See Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 12 (2000) ("Both " 'ripeness' and 'exhaustion of administrative remedies' . . . normally require channeling a legal challenge through the agency."); Kenneth Culp Davis, *Administrative Law Doctrines of Exhaustion of Remedies, Ripeness for Review, and Primary Jurisdiction: 1*, 28 Tex. L. Rev. 168, 168 (1949) (cited approvingly in *Cash Am. Int'l Inc. v. Bennett*, 35 S.W.3d 12, 15 (Tex. 2000)). Exhaustion is discussed next in the context of exclusive jurisdiction.

*of Hous. v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013) (per curiam). Courts do not have subject matter jurisdiction over a case that is within an agency's exclusive jurisdiction at least until the aggrieved party has exhausted available administrative remedies. *Id.*

This doctrine proves another jurisdictional defect that dooms the Losing Plans' motions and their claims too. The Legislature intended HHSC to resolve all issues concerning managed care procurements. Even if the Losing Plans could somehow, someday sue to challenge the procurements (they can't), exclusive jurisdiction remains with HHSC at least until the Losing Plans exhaust administrative remedies, which they haven't done. The Losing Plans conjure an exception to exhaustion for their ultra vires claims, but Supreme Court precedent forecloses that imagined exception.

1. **The exclusive jurisdiction doctrine applies.**

The underlying procurement processes are a classic example of exclusive jurisdiction. The Legislature plainly intended that HHSC have sole authority to make (at least) the initial determination of whom to contract with. HHSC has express authority to "enter into contracts as necessary to perform any of the commission's powers or duties." Tex. Gov't Code § 525.0101. And the Legislature expressly authorized HHSC to "procure[] . . . contracts necessary to implement" the Medicaid managed care program and CHIP. *Id.* § 532.0051; Tex. Health & Safety Code § 62.155(a); *see also* Tex. Gov't Code § 2155.144.

In addition, courts historically have had no role in the minutiae of executive branch procurement. *See Red River Holdings*, 87 Fed. Cl. at 793–94. The entire venture is agency-directed, and every procurement standard is tied to a statute or regulation, not common law. *See, e.g.*, Children's Plans Mot. 12. The procurement standards plaintiffs rely on are all directed at HHSC in its role as procuring agency. *See, e.g.*, *id.* 35–40. And the statutes provide for administrative procedures to allow disappointed bidders to protest solicitations and contract awards. Tex. Gov't Code § 2155.076.

These features demonstrate a "pervasive regulatory scheme" governing procurements, including resolving complaints by disappointed bidders. *CPS Energy v. ERCOT*, 671 S.W.3d 605, 618 (Tex. 2023). That scheme is conclusive evidence that the Legislature intended that HHSC's procurement process, including administrative protests, be the exclusive means of evaluating offers and resolving issues related to HHSC's choice of contractual counterparties. *See, e.g.*, *id.*; *City of Austin v. Travis Cent. Appraisal Dist.*, 506 S.W.3d 607, 617–18 (Tex. App.—Austin 2016, no pet.) (Field, J.) (finding comprehensive regime that included "a limited statutory right to challenge certain actions" in administrative protests to create exclusive jurisdiction).

And there's no question that administrative remedies remain open and available to the Losing Plans. *See supra*, pp. 24–26. Jurisdiction remains exclusively with the agency and so the Losing Plans' lawsuit must be dismissed. *See In re Entergy Corp.*, 142 S.W.3d 316, 321 (Tex. 2004).

## 2. There is no loophole for the Losing Plans' ultra vires claims.

The Losing Plans say they didn't have to exhaust administrative remedies because they sued under an ultra vires theory. Children's Plans Mot. 18 n.5; CR.4064–65, 4187.

The Losing Plans have the law all wrong—there's no loophole for ultra vires claims that seek to replace administrative consideration with court-imposed injunctions. To the contrary, Texas law has long required (at the very least) exhaustion of administrative remedies before a plaintiff may invoke a court's equitable jurisdiction to attack an administrative process or result. *See, e.g.*, *Jennings v. Carson*, 220 S.W. 1090, 1091 (Tex. [Comm'n App.] 1920). That requirement follows from the Supreme Court's recognition that there's a "vast difference in a court reviewing a final order of an administrative board and in prohibiting such board from making any order." *Tex. State Bd. of Examiners in Optometry v. Carp*, 343 S.W.2d 242, 246 (Tex. 1961) (quotation marks omitted). Here, the district court's injunction improperly prohibited Commissioner Young from even deciding the administrative appeals, and the Losing Plans ask this Court commit to the same error.

Instead, it's only ultra vires claims that challenge an agency's jurisdiction to decide the matter *at all* that escape exclusive jurisdiction's grip. *See, e.g.*, *TEA v.*

*Cypress-Fairbanks ISD*, 830 S.W.2d 88, 91 (Tex. 1992); *Westheimer ISD v. Brockette*, 567 S.W.2d 780, 785–86 (Tex. 1978).[32]

The Losing Plans don't challenge the jurisdiction of HHSC, through Commissioner Young, to hear and decide the same challenges they raise here. Nor could they. *See* Tex. Gov't Code § 2155.076 (protest procedures); 1 Tex. Admin. Code § 391.303(b) ("A respondent may protest a solicitation, response evaluation, or contract award if the respondent is able to specifically identify a statutory or regulatory provision that HHS allegedly violated"); *see id.* §§ 391.305(c), 391307(c)–(d). "The fact that [an agency] might decide 'wrongly' in the eyes of an opposing party does not vitiate the agency's jurisdiction to make an initial decision." *N. Alamo Water Supply Corp. v. Tex. Dep't of Health*, 839 S.W.2d 455, 458 (Tex. App.—Austin 1992, writ denied).[33]

## Conclusion and Prayer

The Court should deny the Losing Plans' motions for temporary relief.

---

[32] The authority cited by the Losing Plans (Children's Plans Mot. 18 n.5) is not in conflict—it considered whether SOAH had jurisdiction to hold any hearing or issue any final order. *See Smith v. Abbott*, 311 S.W.3d 62, 68–69 (Tex. App.—Austin 2010, pet. denied). That jurisdictional evaluation is consistent with "the general rule that a trial court may intercede before administrative remedies are exhausted where the administrative agency lacks jurisdiction." *N. Alamo Water Supply Corp. v. Tex. Dep't of Health*, 839 S.W.2d 455, 458 (Tex. App.—Austin 1992, writ denied).

[33] The Losing Plans briefly gesture at one more possible exception: They say, "completion of the internal HHSC appeal process ***does not*** facilitate any further administrative action or a contested-case proceeding in state court." Children's Plans Mot. 18 n.5. They don't cite any support for this exception and there's none. And they wouldn't satisfy their made-up exception anyway: HHSC's internal appeal process facilitates finalizing the award of the contracts, *see* 1 Tex. Admin. Code § 391.309, and may obviate the need for any proceeding in state court. It's not optional.

Respectfully submitted,

**Scott Douglass &
McConnico LLP**

Jason R. LaFond
State Bar No. 24103136
jlafond@scottdoug.com
Cheryl Joseph LaFond
State Bar No. 24104015
clafond@scottdoug.com
303 Colorado Street, Suite 2400
Austin, Texas 78701
(512) 495-6300

*Counsel for Appellant Molina Healthcare of Texas, Inc.*

## CERTIFICATE OF COMPLIANCE

Microsoft Word 2019 reports that this brief contains 8,236 words, excluding the portions of the brief exempt from the word count under Texas Rule of Appellate Pro-cedure 9.4(i)(1).

_____

JASON R. LAFOND

# In the Fifteenth Court of Appeals
# Austin, Texas

Cecile Erwin Young, in her Official Capacity as the Executive Commissioner of the Texas Health and Human Services Commission, et al.,

*Appellants*,

*v.*

Cook Children's Health Plan, et al.,

*Appellees*.

On Appeal from the 353rd Judicial District of Travis County,
No. D-1-GN-24-003839

## Response Appendix

**Tab**

**1**     Print-outs from LBB Contracts Database

# TAB 1

NOTE

Contract information maintained by the LBB and included in this report is from information submitted by each state agency. Although every effort was made to correct obvious errors an

[Export to Excel] [Export to Word]

◉ Display Condensed Data Set  ○ Display Expanded Data Set

| Code | Agency | Contract | Award Date | Current Contract Value (Excludes Options not Exercised) | Bids | Vendor | Attachments |
|------|--------|----------|-----------|--------------------------------------------------------|------|--------|-------------|
| 529 | Health and Human Services Commission | 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-00002 | 09/01/2011 | $5,792,960,299 | 1 | COOK CHILDREN'S HEALTH CARE SYSTEM | HHSC Manage |

 

[|<] [<] [>] [>|]

1   of 1  [GoTo]

[Return]



```
┌─NOTE────────────────────────────────────────────────────────────────────────────────────────────────────────────────
│ Contract information maintained by the LBB and included in this report is from information submitted by each state agency. Although every effort was made to correct obvious errors an
│
└────────────────────────────────────────────────────────────────────────────────────────────────────────────────────
```

[Export to Excel] [Export to Word]

🔘 Display Condensed Data Set  ⚪ Display Expanded Data Set

| Code | Agency | Contract | Award Date | Current Contract Value (Excludes Options not Exercised) | Bids | Vendor |
|------|--------|----------|-----------|--------------------------------------------------------|------|--------|
| 529 | Health and Human Services Commission | 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-00006 | 09/01/2011 | $28,753,091,345 | 1 | BANKERS RESERVE LIFE INSURANCE CO OF WISCONSIN |

[|<] [<] [>] [>|]

1    of 1 [GoTo]

[Return]



┌─ NOTE ──────────────────────────────────────────────────────────────────────────────────────────────────────────
│  Contract information maintained by the LBB and included in this report is from information submitted by each state agency. Although every effort was made to correct obvious errors an
└──────────────────────────────────────────────────────────────────────────────────────────────────────────────────

[Export to Excel]  [Export to Word]

🔘 Display Condensed Data Set   ⚪ Display Expanded Data Set

| Code | Agency | Contract | Award Date | Current Contract Value (Excludes Options not Exercised) | Bids | Vendor | Attachments |
|------|--------|----------|------------|--------------------------------------------------------|------|--------|-------------|
| 529 | Health and Human Services Commission | 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-00007 | 09/01/2011 | $27,163,862,562 | 1 | SUPERIOR HEALTHPLAN INC | HHSC Managed Care (24 con |

[ |< ] [ < ] [ > ] [ >| ]

[1]  of 1 [GoTo]

[Return]



NOTE
Contract information maintained by the LBB and included in this report is from information submitted by each state agency. Although every effort was made to correct obvious errors an

[Export to Excel] [Export to Word]

🔘 Display Condensed Data Set   ⚪ Display Expanded Data Set

| Code | Agency | Contract | Award Date | Current Contract Value (Excludes Options not Exercised) | Bids | Vendor | Attachments |
|------|--------|----------|------------|--------------------------------------------------------|------|--------|-------------|
| 529 | Health and Human Services Commission | 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-00014 | 09/01/2011 | $18,203,908,109 | 1 | TEXAS CHILDRENS HEALTH PLAN | HHSC Managed Care (2 |

[|<] [<] [>] [>|]

1 of 1 [GoTo]

[Return]



┌─ NOTE ──────────────────────────────────────────────────────────────────────────────────────────────
│ Contract information maintained by the LBB and included in this report is from information submitted by each state agency. Although every effort was made to correct obvious errors an
└──────────────────────────────────────────────────────────────────────────────────────────────────────

[Export to Excel] [Export to Word]

◉ Display Condensed Data Set  ○ Display Expanded Data Set

| Code | Agency | Contract | Award Date | Current Contract Value (Excludes Options not Exercised) | Bids | Vendor | Attachments |
|---|---|---|---|---|---|---|---|
| 529 | Health and Human Services Commission | 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-00015 | 09/01/2011 | $6,091,829,223 | 1 | WELLPOINT INSURANCE COMPANY | HHSC Managed Care |

[|<] [<] [>] [>|]

[1]  of 1  [GoTo]

[Return]



NOTE

Contract information maintained by the LBB and included in this report is from information submitted by each state agency. Although every effort was made to correct obvious errors an

 **Export to Excel**   **Export to Word**

⦿ Display Condensed Data Set    ○ Display Expanded Data Set

| Code | Agency | Contract | Award Date | Current Contract Value (Excludes Options not Exercised) | Bids | Vendor | Attachments |
|---|---|---|---|---|---|---|---|
| 529 | Health and Human Services Commission | 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-00015 | 09/01/2011 | $6,091,829,223 | 1 | WELLPOINT INSURANCE COMPANY | HHSC Managed Care ( |

|< | < | > | >|

1  of 1  GoTo

 Return



# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jason LaFond on behalf of Jason LaFond
Bar No. 24103136
jlafond@scottdoug.com
Envelope ID: 104826163
Filing Code Description: Response
Filing Description: Molina Healthcare of Texas, Inc.'s Response to Motions for Temporary Relief
Status as of 8/26/2025 7:17 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Michaelle Peters | | mpeters@scottdoug.com | 8/25/2025 5:41:08 PM | SENT |
| Julie Wright | | julie.wright@nortonrosefulbright.com | 8/25/2025 5:41:08 PM | SENT |
| Amanda DoddsPrice | | amanda.price@squirepb.com | 8/25/2025 5:41:08 PM | SENT |
| Maria Williamson | | maria.williamson@oag.texas.gov | 8/25/2025 5:41:08 PM | SENT |
| Mandy Patterson | | mpatterson@adjtlaw.com | 8/25/2025 5:41:08 PM | SENT |
| Michelle Joyner | | mjoyner@scottdoug.com | 8/25/2025 5:41:08 PM | SENT |
| William FCole | | William.Cole@oag.texas.gov | 8/25/2025 5:41:08 PM | SENT |
| Abril Rivera | | arivera@scottdoug.com | 8/25/2025 5:41:08 PM | SENT |
| Nancy Villarreal | | nancy.villarreal@oag.texas.gov | 8/25/2025 5:41:08 PM | SENT |
| David Johns | | david@cobbjohns.com | 8/25/2025 5:41:08 PM | SENT |
| Jessie Johnson | | jessie.johnson@nortonrosefulbright.com | 8/25/2025 5:41:08 PM | SENT |
| Stacey Jett | | sjett@adjltaw.com | 8/25/2025 5:41:08 PM | SENT |
| Cory Scanlon | | cory.scanlon@oag.texas.gov | 8/25/2025 5:41:08 PM | SENT |

Associated Case Party: Cook Children's Health Plan

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Karen Burgess | 796276 | kburgess@burgesslawpc.com | 8/25/2025 5:41:08 PM | SENT |
| Anna Baker | 791362 | abaker@adjtlaw.com | 8/25/2025 5:41:08 PM | SENT |
| Amy Warr | 795708 | awarr@adjtlaw.com | 8/25/2025 5:41:08 PM | SENT |
| Juliana Bennington | | jbennington@perkinscoie.com | 8/25/2025 5:41:08 PM | SENT |
| Jonathan Hawley | | jhawley@perkinscoie.com | 8/25/2025 5:41:08 PM | ERROR |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jason LaFond on behalf of Jason LaFond
Bar No. 24103136
jlafond@scottdoug.com
Envelope ID: 104826163
Filing Code Description: Response
Filing Description: Molina Healthcare of Texas, Inc.'s Response to Motions for Temporary Relief
Status as of 8/26/2025 7:17 AM CST

Associated Case Party: Cook Children's Health Plan

| | | | | |
|---|---|---|---|---|
| Jonathan Hawley | | jhawley@perkinscoie.com | 8/25/2025 5:41:08 PM | ERROR |
| Reina A.Almon-Griffin | | ralmon-Griffin@perkinscoie.com | 8/25/2025 5:41:08 PM | SENT |
| Trisha Marino | | tmarino@perkinscoie.com | 8/25/2025 5:41:08 PM | SENT |
| Katie Dolan-Galaviz | | kgalaviz@burgesslawpc.com | 8/25/2025 5:41:08 PM | SENT |
| Perkins Docketing Team | | DocketSEA@perkinscoie.com | 8/25/2025 5:41:08 PM | SENT |
| Matthew Gordon | | mgordon@perkinscoie.com | 8/25/2025 5:41:08 PM | SENT |

Associated Case Party: Texas Children's Health Plan

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Mark Emery | 24050564 | mark.emery@nortonrosefulbright.com | 8/25/2025 5:41:08 PM | SENT |
| Warren Huang | 796788 | warren.huang@nortonrosefulbright.com | 8/25/2025 5:41:08 PM | SENT |
| Paul Trahan | 24003075 | paul.trahan@nortonrosefulbright.com | 8/25/2025 5:41:08 PM | SENT |
| Susan Harris | 6876980 | susan.harris@nortonrosefulbright.com | 8/25/2025 5:41:08 PM | SENT |
| Thomas Coulter | 4885500 | tom.coulter@nortonrosefulbright.com | 8/25/2025 5:41:08 PM | SENT |
| Kayla Ahmed | | kayla.ahmed@nortonrosefulbright.com | 8/25/2025 5:41:08 PM | SENT |

Associated Case Party: Wellpoint Insurance Company

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Robert Johnson | 10786400 | rjohnson@foley.com | 8/25/2025 5:41:08 PM | SENT |
| Michelle Ku | 24071452 | mku@foley.com | 8/25/2025 5:41:08 PM | SENT |
| Kristin Hernandez | | kristin.hernandez@foley.com | 8/25/2025 5:41:08 PM | SENT |
| Stacey Obenhaus | | sobenhaus@foley.com | 8/25/2025 5:41:08 PM | SENT |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jason LaFond on behalf of Jason LaFond
Bar No. 24103136
jlafond@scottdoug.com
Envelope ID: 104826163
Filing Code Description: Response
Filing Description: Molina Healthcare of Texas, Inc.'s Response to Motions for Temporary Relief
Status as of 8/26/2025 7:17 AM CST

Associated Case Party: Wellpoint Insurance Company

| | | | | |
|---|---|---|---|---|
| Stacey Obenhaus | | sobenhaus@foley.com | 8/25/2025 5:41:08 PM | SENT |
| Benjamin Grossman | | bjgrossman@foley.com | 8/25/2025 5:41:08 PM | SENT |

Associated Case Party: Superior Healthplan Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Richard Phillips | 24032833 | Rich.Phillips@hklaw.com | 8/25/2025 5:41:08 PM | SENT |
| J McCaig | 24070083 | meghan.mccaig@outlook.com | 8/25/2025 5:41:08 PM | SENT |
| Karen Walker | | karen.walker@hklaw.com | 8/25/2025 5:41:08 PM | SENT |
| Tiffany Roddenberry | | tiffany.roddenberry@hklaw.com | 8/25/2025 5:41:08 PM | SENT |

Associated Case Party: Texas Health and Human Services

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Victoria Gomez | | victoria.gomez@oag.texas.gov | 8/25/2025 5:41:08 PM | SENT |
| Jennifer Cook | | Jennifer.Cook@oag.texas.gov | 8/25/2025 5:41:08 PM | SENT |

Associated Case Party: Molina Healthcare of Texas, Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Cheryl LaFond | 24104015 | clafond@scottdoug.com | 8/25/2025 5:41:08 PM | SENT |
| Jason R.LaFond | | jlafond@scottdoug.com | 8/25/2025 5:41:08 PM | SENT |

Associated Case Party: Aetna Better Health of Texas, Inc.

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jason LaFond on behalf of Jason LaFond
Bar No. 24103136
jlafond@scottdoug.com
Envelope ID: 104826163
Filing Code Description: Response
Filing Description: Molina Healthcare of Texas, Inc.'s Response to Motions for Temporary Relief
Status as of 8/26/2025 7:17 AM CST

Associated Case Party: Aetna Better Health of Texas, Inc.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Joseph Knight | 11601275 | jknight@ebbklaw.com | 8/25/2025 5:41:08 PM | SENT |

Associated Case Party: Cecile Erwin Young, Texas Health and Human Services

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Cory Scanlon | 24104599 | cory.scanlon@oag.texas.gov | 8/25/2025 5:41:08 PM | SENT |
| Jeffrey Stephens | | jeff.stephens@oag.texas.gov | 8/25/2025 5:41:08 PM | SENT |